841 F.2d 968
 Therese U. DONNELLY, Personal Representative of the Estate
of Joseph F. Donnelly, deceased, Plaintiff-Appellant,
v.
UNITED STATES of America; Secretary of the Interior;
Director, Bureau of Land Management and Eklutna,
Inc., Defendants-Appellees.
James W. LEE, Plaintiff-Appellant,
v.
UNITED STATES of America; Secretary of the Interior;
Director, Bureau of Land Management; Eklutna,
Inc.; Cook Inlet Region, Inc.,
Defendants-Appellees.
 Nos. 86-4428, 87-3834.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1988.
Decided March 10, 1988.
 
 Steven P. Oliver, Anchorage, Alaska, for plaintiffs-appellants.
 Vicki L. Plaut, Land & Natural Resources Div., Dept. of Justice, Washington, D.C.; David P. Wolf, Copeland, Landye, Bennett and Wolf, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before ANDERSON and FLETCHER, Circuit Judges, and CARROLL,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 This action arises from a land dispute between the United States and several homesteaders in the Eagle River Valley area in Alaska. Some of these claims have already been decided adversely to the claimants, on jurisdictional grounds. See McIntyre v. United States, 789 F.2d 1408 (9th Cir.1986); Lee v. United States, 629 F.Supp. 721 (D.Alaska 1985), aff'd, 809 F.2d 1406 (9th Cir.1987), cert. denied, sub nom. Lee v. Eklutna, Inc., --- U.S. ----, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988).
 
 
 2
 Donnelly appeals the district court's dismissal of this action.[1] We affirm.BACKGROUND
 
 
 3
 In 1950, the Federal Power Commission (FPC) set aside certain lands in the Eagle River Valley for possible power development projects, thereby withdrawing the lands from the public lands open to entry by homesteaders. Two years later, the FPC issued a "no injury" determination that power development in the area would not be injured if the lands were restored to homestead entry. Although Sec. 24 of the Federal Power Act (FPA), 16 U.S.C. Sec. 818, provides that the Secretary of the Interior shall restore lands to entry after a "no injury" determination, the Secretary did not do so (for unknown reasons). Accordingly, the Donnellys' homestead applications to settle on some of this land were rejected in 1957 and again in 1959. From 1957 through 1968, the Donnellys tried to gain title by various means, including petitions to their congressional representatives and to the Secretary of the Interior, repeated renewals of the homestead application with the Bureau of Land Management (BLM), and, later, specific challenges to the power classification withdrawal. However, they departed from the formal appeal procedure of the BLM as early as 1959, and only availed themselves of the procedure in 1967-68, when they began a renewed challenge to the power site classification. The Donnellys retained legal counsel in 1963, and in 1964 they applied for homestead patent to 67.5 acres, which surveys showed were outside the boundaries of the withdrawn lands. They received a patent to this portion in 1965, leaving 92.5 acres in dispute. The parties disagree as to whether the patent to 67.5 acres represented a "compromise and settlement."
 
 
 4
 In 1970, the Donnellys received a notice of trespass from the government and were ordered to leave the power reserve land and remove improvements they had placed on it. The following year Congress passed the Alaska Native Claims Settlement Act (ANCSA), Pub.L. No. 92-203, 85 Stat. 688 (codified at 43 U.S.C. Secs. 1601-29a), which extinguished aboriginal land claims of Alaskan natives in exchange for the right of native corporations to select acreages of public lands. In 1974, Eklutna, Inc., selected the lands claimed by the Donnellys. In 1975 the government filed a trespass action against the Donnellys, who counterclaimed against the United States under the Quiet Title Act (QTA), Pub.L. No. 92-562, 86 Stat. 1176 (codified at 28 U.S.C. Sec. 2409a). In 1979, the government patented the land to the native corporations, and its trespass action was dismissed, leaving only the Donnellys' counterclaims and third party claims against Eklutna.
 
 
 5
 On November 5, 1982, after a bench trial, the district court dismissed the Donnellys' counterclaims against the United States and their third party claim of title against Eklutna. On November 13, 1986, the district court granted summary judgment dismissing the Donnellys' second cause of action against Eklutna, based on Sec. 14(c)(1) of ANCSA, 43 U.S.C. Sec. 1613(c)(1). Finally, on December 5, 1986, the district court amended the 1982 memorandum decision, and entered summary judgment against the Donnellys on their remaining claims based on ANCSA, Secs. 14(g) and 22(b) and on violations of equal protection and due process.
 
 DISCUSSION
 I. Lack of Jurisdiction
 
 6
 The QTA provides the exclusive remedy for resolving title disputes against the United States. Block v. North Dakota, 461 U.S. 273, 286, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). Defendants urge, and the district court found, two grounds for dismissal under the QTA of the counterclaims against the United States: that the United States disclaimed interest in the land and that the statute of limitations had run. Significantly, if the United States is dismissed from the case the title claims against Eklutna must be dismissed also because the United States is an indispensable party to the Donnellys' action against Eklutna. Lee v. United States, 809 F.2d at 1410-11.[2]A. United States' Disclaimer of Interest
 
 Section 2409a(e)[3] provides that:
 
 7
 If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of, the authority conferred by section 1346(f) of this title.
 
 
 8
 (Section 1346(f) is the jurisdiction-vesting counterpart to Sec. 2409a's waiver of sovereign immunity.) The United States conveyed the disputed homestead property as required under ANCSA, and the disclaimer was confirmed by the district court as valid and in good faith. See Lee v. United States, 629 F.Supp. at 726. Therefore, the district court is without jurisdiction over the Donnellys' counterclaims, unless there is an alternate jurisdictional ground independent of Sec. 1346(f)'s "quiet title" jurisdiction.
 
 
 9
 The Donnellys urge that federal question jurisdiction be found under 28 U.S.C. Sec. 1331, because their claims implicate 16 U.S.C. Sec. 818 (Sec. 24 of the FPA, authorizing withdrawal of lands from entry), 43 U.S.C. Sec. 161 (the Homestead Act, repealed 1976) and 43 U.S.C. Sec. 1601 (ANCSA). To the extent that these statutes go to the Donnellys' claim to title, they do not function independently of the QTA in the Donnellys' action, do not by themselves waive sovereign immunity, and therefore do not confer jurisdiction.
 
 
 10
 A more complicated question is presented by the suggestion that the Donnellys have a separate jurisdictional ground under the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702, which waives sovereign immunity for claims of wrongs suffered by agency action. The Donnellys claim they suffered such wrongs because the BLM misapplied FPA Sec. 24 and the homestead laws. It is ambiguous whether, and to what extent, the APA confers jurisdiction in this case on this basis.
 
 
 11
 On one hand, the QTA provides the exclusive remedy for title disputes against the government, and assertion of the APA as an independent means for pressing such suits has been expressly rejected. Block, 461 U.S. at 286 n. 22, 103 S.Ct. at 1819 n. 22; McIntyre v. United States, 789 F.2d 1408, 1410 (9th Cir.1986); Lee v. United States, 809 F.2d at 1409 & n. 2. In Block, the Court rejected North Dakota's claim that the APA's 1976 amendments established "a new supplemental remedy " (emphasis added) to assert property title against the United States. 461 U.S. at 286 n. 22, 103 S.Ct. at 1819 n. 22. The Court noted that the APA could not be interpreted to overcome the QTA's exclusive remedy because the APA "specifically confers 'no authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.' " Id. The QTA expressly forbade relief where the 12-year limitations period had run, under Sec. 2409a(g).[4]
 
 
 12
 However, it is not necessarily the case that the APA is unavailable as a jurisdictional ground, as opposed to a remedy, under the reasoning of Block. We must consider whether Sec. 2409a(e) "forbids relief" under the QTA when the United States has disclaimed an interest in the property, when an alternate jurisdictional basis would otherwise exist under the APA. In other words, does the existence of an alternate jurisdictional basis preserve jurisdiction for resolving title disputes under the QTA, or does the qualifying language of Sec. 2409a(e) simply mean that the disclaimer of interest will not divest the court of jurisdiction over independent claims not disputing title?
 
 
 13
 In Lee v. United States, we suggested that allegations of "administrative wrongdoing" will trigger the exception to Sec. 2409a(e) and provide a jurisdictional basis for the QTA claim.
 
 
 14
 We do not hold, and do not read McIntyre to hold, that the Quiet Title Act constitutes the exclusive source of jurisdiction for all claims against the United States involving the United States' disposition of public lands. Section 2409a(e) of the Act provides that upon the United States' disclaimer of interest, jurisdiction in the district court will continue if the court "has jurisdiction ... on ground[s] other than and independent of the authority conferred by [the jurisdictional provision of the Act]." 28 U.S.C. Sec. 2409a(e) (West Supp.1987). The Administrative Procedure Act provides jurisdiction in cases of administrative wrongdoing.
 
 
 15
 809 F.2d at 1409 n. 2. Significantly, no independent administrative wrongdoing was alleged in Block or McIntyre, and in Lee it was alleged but barred by the statute of limitations. 809 F.2d at 1409 n. 2. Presumably, in Block and McIntyre the only "administrative wrongdoing" was the government's alleged wrongful assertion of title itself, and this, without more, could not make the APA into a jurisdictional peg for a QTA claim. However, the Donnellys assert that the Secretary's unjustified failure to obey Sec. 24 of the Federal Power Act wrongfully prevented them from establishing title.
 
 
 16
 There is a good reason to allow the Donnellys to assert the APA as a jurisdictional basis for their title dispute under Sec. 2409a(e). Otherwise, a claim founded on a title dispute stemming from administrative wrongdoing might be rendered unreviewable by the United States' pre-trial disposal of the property, because Sec. 2409a(e) would require dismissal of the claim against the United States. Moreover, in any title dispute or trespass defense against the successor-in-interest to the United States (here, Eklutna), the Donnellys would be barred from asserting their "administrative wrongdoing" theory of title because, under Lee, the United States would be a necessary party over whom no jurisdiction could be exercised. Lee, 809 F.2d at 1410-11. We also note that any APA claim raised by the Donnellys against the United States would be premised on the title dispute; since the APA does not authorize money damages, the Donnellys could not state a claim for relief under the APA. Even an inverse condemnation action could be barred if the Donnellys are not entitled to assert title to the land. In sum, we are not aware of a claim of administrative wrongdoing that could be brought in these circumstances other than a QTA claim.
 
 
 17
 We conclude that Sec. 2409a(e) allows jurisdiction over a title dispute where the title claim is founded on alleged administrative wrongdoing, beyond a simple assertion of title by the government. See Lee, 809 F.2d at 1409 n. 2. If the government deprives someone of title by administrative wrongdoing, it cannot evade review simply by selling or otherwise disposing of the property.[5]
 
 B. Statute of Limitations Bar
 
 18
 Quiet title claims against the United States are subject to a 12-year statute of limitations from the date on which the claimant "knew or should have known of the claim of the United States." 28 U.S.C. Sec. 2409a(g). This statute of limitations applies retroactively. See Block, 461 U.S. at 284, 103 S.Ct. at 1818; Grosz v. Andrus, 556 F.2d 972, 975 (9th Cir.1977). If the statute of limitations has run, we lack jurisdiction to consider the Donnellys quiet title claims. Block, 461 U.S. at 292, 103 S.Ct. at 1822; McIntyre, 789 F.2d at 1411. We review de novo the district court's determination concerning QTA jurisdiction. Lee, 809 F.2d at 1408.
 
 
 19
 The Donnellys filed their answer and counterclaims against the United States on May 21, 1975. Accordingly, their QTA claim is barred if it accrued prior to May 21, 1963. The Donnellys first received notice of the government's position--that sizable portions of their claim were within withdrawn lands--as early as 1957, and their last administrative appeal was rejected in 1968, but the facts are not clear as to the date within this period on which the Donnellys' claim accrued. The Donnellys argue that their claim accrued only when the administrative procedures were completed. In Crown Coat Front Co. v. United States, 386 U.S. 503, 511-12, 87 S.Ct. 1177, 1182, 18 L.Ed.2d 256 (1967), the Court held that where a government contract provided for administrative review of the contract dispute in the first instance, the statute of limitations begins to run only on accrual of the "right of action" in district court, following administrative review. Crown Coat Front suggests to us that a QTA claim should not accrue until administrative procedures are exhausted, so long as an action brought by a claimant prior to exhaustion would be subject to dismissal on that ground. Cf. McIntyre, 789 F.2d at 1411 ("At the very latest, the Secretary of the Interior's final and unfavorable March 11, 1964, decision rejecting the notice of homestead entry should have given McIntyre knowledge that the government claimed an interest in the land."). The district court concluded that, under the regulations in effect at the time, the Donnellys' claim was subject to dismissal for non-exhaustion. Dist.Ct.Memorandum at 11-12 (citing Montgomery v. Rumsfeld, 572 F.2d 250, 254 (9th Cir.1978); Davis v. Nelson, 329 F.2d 840, 847 (9th Cir.1964)). If we assume that the district court is correct, we would concede that had the Donnellys followed the administrative appeals process, their claim in district court under the QTA would not have accrued until some final BLM decision was rendered.
 
 
 20
 The problem for the Donnellys is that they did not follow the administrative review procedure.[6] The local BLM office rejected the Donnellys claim in a decision dated November 11, 1957. That decision gave notice of the appeal procedure, but was not received by the Donnellys, who had moved. However, it was handed to Mrs. Donnelly in April 1958, when she went to the BLM office having heard from a neighbor that the Donnelly claim had been closed. A BLM official told Mrs. Donnelly that her only recourse was to refile the homestead claim, which she did. Before the response to this claim came down, the Donnellys tried political channels, contacting Delegate (later Senator) Bartlett, who tried unsuccessfully to intervene on their behalf, and (together with Lee and others) petitioning the Assistant Secretary of the Interior. The responses generated by these efforts uniformly insisted that the Donnellys' claim on the withdrawn lands was invalid, and even that they were in trespass. The Donnellys' claim was again rejected by the local BLM office by letter dated March 5, 1959.[7] The Donnellys did not appeal, but rejected the BLM's decision, refused the BLM's tender of their homestead filing fees, and stated that they would await the resolution of their claim between Senator Bartlett and the Interior Department. The BLM responded that it would deposit the Donnellys' money in a "suspense account" pending final action "determined by Senator Bartlett and the Interior Department."
 
 
 21
 Thus, by 1959 the Donnellys had departed from the formal appeal procedure. It therefore cannot be said that the statute of limitations was tolled by their pursuit of administrative process, regardless of whether any action they might have thereafter brought would be subject to dismissal for nonexhaustion. In 1961, the Federal Power Commission notified the BLM that the disputed land was withdrawn by a new Power Site classification, and in the same year the BLM filed a Plat of Survey (notice of which was published in the Federal Register), which determined that all but 67.5 acres of the Donnellys' claim was on withdrawn land. We agree with the district court that by this time at the latest, the Donnellys had sufficient notice "of the claim of the United States" to start the 12-year limitations period. 28 U.S.C. Sec. 2409a(g); see also Lee, 629 F.Supp. at 724; 809 F.2d at 1410. Moreover, the Donnellys by 1961 were not engaged in pursuit of administrative remedies that would toll the statute of limitations.[8] The 12-year limitations period had expired by the time the Donnelly's brought their counterclaims in 1975.
 
 C. Claims Against Eklutna
 
 22
 The Donnellys assert quiet title claims against Eklutna, Inc., which received patents to the disputed lands from the United States. In order to challenge the validity of Eklutna's patents, the Donnellys must establish their own entitlement to the lands. Lee, 809 F.2d at 1410. The United States is an indispensable party to the action against Eklutna, because the Donnellys "can only properly establish their asserted entitlement to the disputed lands in direct proceedings against the United States.... It follows from the fact that the United States is an indispensable party to this action that the district court's lack of jurisdiction as to the claims against the United States requires the dismissal of the claims against the Native corporations." Id. at 1411. Accordingly, the Donnellys quiet title claims against Eklutna must be dismissed.
 
 II. Non-QTA Claims
 
 23
 The Donnellys argue that their claims under ANCSA Sec. 14(c) and the common law theory of "constructive trust" do not hinge on the QTA and are therefore not barred by the jurisdictional defects of the QTA claims. The same ANCSA claim is advanced here by James Lee. It was not decided in the published Lee decisions, and has been consolidated with the Donnellys' appeals.
 
 A. ANCSA Sec. 14(c)
 
 24
 Appellants claim that Eklutna, Inc., and Cook Inlet Region, Inc., (the native corporations) violated Sec. 14(c)(1) of ANCSA, 43 U.S.C. Sec. 1613(c)(1), by failing to convey them the disputed land. Section 14(c)(1) provides that the native corporation receiving patents under ANCSA "shall first convey to any Native or non-Native occupant, without consideration, title to the surface estate of the tract occupied as of December 18, 1971 ... as a primary place of residence, or as a primary place of business ..." Appellants claim to have been occupying the disputed lands as primary places of residence and business as of December 18, 1971. The district court held that, as trespassers, Lee and Donnelly could not be held to have "occupied" the lands within the meaning of Sec. 14(c)(1).
 
 
 25
 As the district court noted, Sec. 14(c)(1) could not operate as "a sort of amnesty provision extending rights to individuals who are merely trespassers, failed homesteaders, or land users without any vested rights prior to December 1, 1971," because there was no indication of congressional intent to override the established principle that individuals could obtain no rights to withdrawn lands. See United States v. Consolidated Mines and Smelting Co., 455 F.2d 432, 444 (9th Cir.1971). Moreover, the congressional intent to provide a "just and fair settlement" of native land claims is inconsistent with an interpretation of Sec. 14(c)(1) that would reduce the land patented to native corporations in favor of trespassers.
 
 
 26
 However, appellants argue that they are not trespassers, by virtue of their vested equitable title to the land. We need not resolve this merits issue.[9] In Lee, 629 F.Supp. at 730-32, the district court held that ANCSA could not require native corporations to resolve the merits of a homesteader's title dispute with the government. The same reasoning should apply to ANCSA Sec. 14(c)(1). To the extent that an occupant is entitled only to a conveyance of land if he is not in trespass, appellants' Sec. 14(c)(1) claims would require the native corporation to resolve the appellants' title dispute with the government. Put another way, appellants' Sec. 14(c)(1) claims are, again, based on their title claim, which cannot be resolved in any action to which the United States is not a party. Accordingly, the Sec. 14(c)(1) claims are also barred by the QTA statute of limitations.
 
 
 27
 B. "Constructive Trust"
 
 
 28
 The Donnellys claim that the disputed lands were improperly conveyed by the United States to Eklutna, and therefore should be considered held by Eklutna in constructive trust on behalf of the Donnellys. For the reasons stated in Lee v. United States, 629 F.Supp. at 728-29, this common law claim fails because it is preempted by ANCSA.
 
 CONCLUSION
 
 29
 For the reasons stated above, we AFFIRM the district court's dismissal of appellants' claims against all defendants.
 
 
 
 *
 Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation
 
 
 [1]
 Therese U. Donnelly, as personal representative of the estate of Joseph F. Donnelly, deceased, was substituted as the Appellant in this action following the death of her husband, the original appellant, who brought suit on behalf of the Donnellys
 
 
 [2]
 As a threshold matter, the Donnellys argue that their title claims are asserted as defenses to the government's trespass action against them, and thus cannot be dismissed under Sec. 2409a according to Block, 461 U.S. at 291-92, 103 S.Ct. at 1822, which stated that "[n]othing prevents the claimant from continuing to assert his title, in hope of inducing the United States to file its own quiet title suit, in which the matter would finally be put to rest on the merits." The Donnellys' interpretation of Block may well be correct, hypothetically; in this case, however, their argument is meritless because the United States' trespass action against the Donnellys was dismissed after the land was patented to Eklutna. Thus, their assertion of title in this action is thrown back upon their counterclaims, which must stand or fall under the QTA
 
 
 [3]
 Formerly Sec. 2409a(d), prior to 1986 amendments
 
 
 [4]
 Formerly, Sec. 2409a(f)
 
 
 [5]
 McIntyre does not require a different result. In McIntyre, we stated that the APA, 5 U.S.C. Sec. 702 "did not create an independent jurisdictional basis for challenging the government's title to real property." 789 F.2d at 1410-11. There, as in Block, we considered only whether the APA could afford relief where the 12-year statute of limitations had run; we did not consider the "disclaimer bar" of 28 U.S.C. Sec. 2409a(e). We decline to construe McIntyre as requiring the absurd result that the government could deprive someone of property title by administrative wrongdoing and then immunize its actions by selling the contested property on the eve of trial
 
 
 [6]
 This procedure called for an appeal to the BLM Director and then to the Secretary of the Interior. See Davis v. Nelson, 329 F.2d at 846-47
 
 
 [7]
 It is unclear from the record whether this letter advised the Donnellys of their appeal rights
 
 
 [8]
 In 1963 and 1964, less than 12 years from the filing of the counterclaims, the Donnellys retained counsel, met and corresponded with BLM officials, contacted another Senator, filed a new homestead claim, and finally received patent to the undisputed lands in 1965. The BLM maintained a consistent position that the disputed lands were not open to homestead entry. In 1967 and 1968, the Donnellys, for the first time, filed claims and appeals with the Interior Department to have the power classifications revoked. These were finally rejected in 1968
 Although a "final" determination of the Donnellys' claim was made in 1968, this claim was a renewal of their earlier claim, and is not an appropriate accrual date for their QTA action.
 We note that the Donnellys "sat on their rights" and brought no quiet title claim from October 1972, when QTA was enacted, until May 1975, when they filed their counterclaims in response to the government's trespass action against them. (The government served the Donnellys with a notice of trespass in 1970.) The statute of limitations expired during this period.
 
 
 [9]
 We note that any resolution of the merits would call for speculation as to whether the appellants' claims may have been superseded by other claims even if the Secretary had followed FPA Sec. 24