Boy Dexter **OGLE, Plaintiff,**

v.

**SALAMATOF NATIVE ASSOCIATION, INC., Defendant.**

**No. A94–579 CV (JKS).**

United States District Court, D. Alaska.

Nov. 2, 1995.

Michael W. Flanigan, Walther & Flanigan (Walther), Anchorage, AK, for plaintiff.

Peter Reed Ehrhardt, Robinson, Beiswenger & Ehrhardt, Soldotna, AK, for defendant.

## ORDER

SINGLETON, District Judge.

Boy Dexter Ogle ("Ogle") sues Salamatof Native Association, Inc. ("Salamatof") in equity for specific performance of a federal statutory duty to reconvey land claimed pursuant to 43 U.S.C. § 1613(c). In addition, Ogle seeks damages based upon supplemental state claims. This Court has jurisdiction over the reconveyance claim pursuant to 28 U.S.C. § 1331 and jurisdiction over the supplemental claims pursuant to 28 U.S.C. § 1367.[1]

Salamatof seeks dismissal pursuant to 43 U.S.C. § 1632(b). Docket Nos. 15 & 21. Salamatof contends that Ogle failed to commence this action within one year of the filing of the map of boundaries, and thereby lost his right to sue. *Id.* The motion is opposed. Docket No. 18. Ogle argues that he was not given sufficient notice of Salamatof's actions regarding his claim to satisfy due process. *Id.* Both parties request oral argument. Docket Nos. 22 & 23. However, the record has been fully developed and oral argument would not be helpful. D.Ak. LR 7.1(i); *see United States v. Cheely*, 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992).

The Court has reviewed the record and concludes that the motion to dismiss should be denied in part and granted in part. Ogle has no viable state claim against Salamatof and his supplemental claims will be dismissed. On the other hand, the existing record leaves open the possibility that Ogle did not receive notice of certain significant events in a manner conforming to due process. If, after a full development of the facts, Ogle establishes that due process was violated, he may be entitled to a judicial remedy. Constitutional due process assures Ogle of notice at two significant stages: First, when the village corporation is preparing its map and considering claims for reconveyance; and second, after the village corporation has considered the claims for reconveyance and proceeds to file its map with the Department of the Interior. The filing of the map effectively announces the village corporation's ruling on claims of reconveyance. Further proceedings will be necessary to determine whether Ogle had actual, inquiry, or constructive notice at each of these crucial

---

1. Ogle sought to perfect his claim under the Native Allotment Act but his claim was rejected as untimely. *See* 43 U.S.C. §§ 270–1 to 270–3 (1970) (repealed 1971). It should be noted that this Court is not deciding whether a procedurally defective allotment application might still be viable; Ogle's involvement with the Bureau of Land Management regarding his former possessory action is a separate matter. The Allotment Act was repealed by the Alaska Native Claims Settlement Act, Pub.L. No. 92–203, 85 Stat. 688 (1971) (co-dified at 43 U.S.C. §§ 1601–1624 ("ANCSA")). ANCSA contained a savings clause for allotment applications filed pursuant to the Allotment Act that were "pending before the Department of the Interior on December 18, 1971." 43 U.S.C. § 1617(a); *see State v. Babbitt*, No. 94–35677, 1995 WL 582204 (9th Cir. Oct. 5, 1995); *Alaska v. Babbitt*, 38 F.3d 1068 (9th Cir.1994); *Akootchook v. United States, Dep't of the Interior*, 747 F.2d 1316 (9th Cir.1984).

points in the determination of his claim. *See* 58 Am.Jur.2d, Notice §§ 5–6, 9, & 15 (1989).[2]

 Actual notice has been said to be of two kinds: (1) express, which includes direct information, and (2) implied, which is inferred from the fact that the person charged had means of knowledge, which it was his duty to use. 58 Am.Jur.2d, Notice § 6. Thus, notice is regarded in law as actual where the person sought to be charged therewith either knows of the existence of the particular facts in question or is conscious of having the means of knowing it, even though such means may not be employed by him or her. *See Perry v. O'Donnell*, 749 F.2d 1346, 1351 (9th Cir.1984). Similar to implied actual notice is constructive notice. 58 Am.Jur.2d, Notice § 7. Constructive notice is a legal inference or a legal presumption of notice which may not be disputed or controverted. *See Butte & Superior Copper Co. v. Clark–Montana Realty Co.*, 249 U.S. 12, 39 S.Ct. 231, 63 L.Ed. 447 (1919); *Hotch v. United States*, 14 Alaska 594, 212 F.2d 280 (9th Cir.1954). The importance of the classification of notice of this character arises from the fact that constructive notice is a legal inference, while implied actual notice is an inference of fact. 58 Am.Jur.2d, Notice § 7. Finally, the closely related concept of inquiry notice exists where a person has knowledge of such facts as

would lead a fair and prudent person using ordinary care to make further inquiries. *Shacket v. Roger Smith Aircraft Sales, Inc.*, 651 F.Supp. 675, 690 (N.D.Ill.1986), *aff'd*, 841 F.2d 166 (7th Cir.1988); *see* discussion at 58 Am.Jur.2d, Notice §§ 6 & 15 (creating a third type of notice which resembles both constructive and actual notice). Under this theory, a person who fails to diligently inquire is charged with knowledge that would have been acquired through such inquiry. 58 Am.Jur.2d, Notice, § 15.

## DISCUSSION

### I. Background

 Central to this case is the Fifth Amendment to the United States Constitution, which provides in relevant part: "No person shall ... be deprived ... of property, without due process of law; ..." This provision acts as a limitation on actions by the United States Government.[3] The phrase "due process of law," which also occurs in the Fourteenth Amendment to the Constitution as a limitation on actions by the states, encompasses two general ideas: the protection of substantive rights (substantive due process) and the protection of procedural fairness (procedural due process). *See Zinermon v. Burch*, 494 U.S. 113, 125–28, 110 S.Ct. 975, 983–85, 108 L.Ed.2d 100 (1990).[4]

---

2. In the event that it is decided that Ogle did not receive the requisite notice, the Court will have the option of either deeming the rejection of Ogle's claim void and returning the matter to Salamatof for reconsideration, or, alternatively, of reviewing Ogle's claim *de novo*. If, on remand, Ogle's claim is again denied, it seems clear to the Court that judicial review will be *de novo*. Proceeding upon the rebuttable presumption that equitable tolling is applicable to 43 U.S.C. § 1632(b), the Court will disregard the one-year statute of limitations and grant Ogle the same judicial review now that he would have received had his petition been filed in a timely manner under ANCSA. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Fadem v. United States*, 52 F.3d 202, 205 (9th Cir.1995). If either party believes that the matter should be returned to the village for reconsideration, or that the doctrine of equitable tolling is not applicable, that party should develop their argument in further briefing.

3. The Fifth Amendment protects property interests only from deprivation by government action.

Private use of state or federal sanctioned private remedies or procedures does not rise to the level of state or federal action. *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 485–86, 108 S.Ct. 1340, 1344–45, 99 L.Ed.2d 565 (1988). A threshold question in this case, therefore is whether Salamatof's role in resolving 14(c) claims rises to the level of federal action. Two cases appear dispositive of this question: *Tulsa* and *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982). They will be discussed later in this decision.

4. Read together, the Fifth and Fourteenth Amendments act similarly as limitations on respectively federal and state action. In the state context, the due process clause of the fourteenth amendment has been read to implicitly incorporate certain substantive rights which are expressed in the Bill of Rights. *See Zinermon*, 494 U.S. at 125, 110 S.Ct. at 983. Conversely, the Fifth Amendment has no express "equal protection clause" corresponding to the one found in the Fourteenth Amendment, but the Court has implied such a provision in the Fifth Amend-

In this case, we are concerned with procedural due process. Specifically, where it is assumed for the purposes of argument that an Alaska Native has used a parcel of land as a primary residence, a primary place of business, or a subsistence campsite, thereby earning a right to reconveyance under 43 U.S.C. § 1613(c)(1), the Court must determine what process is due before that right to reconveyance may be extinguished.[5]

■■■ In context, due process normally requires notice and an opportunity to be heard. Thus, where any proceeding will finally determine a person's property rights, he is entitled to notice reasonably calculated, under all of the circumstances, to apprise him of the pendency of the proceeding and an opportunity to present his claim or objections. *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). What is "reasonable notice" depends upon all the circumstances and requires a delicate balancing of the people's interest in a final resolution of disputes and the claimant's right to protect his property. *Id.; see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180

(1983); *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Actual notice is required as a precondition to a proceeding which will adversely affect the property interests of any party if its name and address are reasonably ascertainable. *Tulsa*, 485 U.S. at 485, 108 S.Ct. at 1344. In determining whether the name and address of a claimant is "reasonably ascertainable," the party having the duty to give notice need only exercise "reasonably diligent efforts" to discover the claim. *Id.*

■■■ In order to resolve this case, we must therefore decide a number of questions: First, whether Salamatof's role in evaluating and determining section 14(c) claims makes it a federal actor for the purposes of Fifth Amendment analysis; second, whether Salamatof's actions in developing a map addressing and resolving section 14(c) claims constitutes a "proceeding" which requires notice; third, if a proceeding is contemplated, whether the village corporations must afford section 14(c) claimants, like Ogle, a particular type of "hearing" in order to evaluate their 14(c) claims;[6] and fourth, whether additional

---

ment. *See, e.g., Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). Thus, Fifth Amendment "due process" and Fourteenth Amendment "due process" serve roughly the same purposes and should be given a consistent interpretation. In this decision, which deals with procedural due process, the Court will assume that the Supreme Court would reach the same results under the Fifth Amendment regarding federal action that it has reached under the Fourteenth Amendment regarding state action. Interestingly, Congress has expressly provided a person with a cause of action against state officials who violate her constitutional rights. *See* 42 U.S.C. § 1983. Congress has not provided a corresponding remedy against federal officials who deprive a person of constitutional rights, but the Supreme Court has remedied this omission. *See, e.g., Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

5. The right to make a claim under 14(c) appears to be a "property" right protected by the Fifth Amendment. *See, e.g., Tulsa*, 485 U.S. at 485, 108 S.Ct. at 1344 (an unsecured claim against an estate is the kind of intangible property protected by the Fourteenth Amendment and by reasonable extension, the Fifth Amendment).

6. If the Court determines that Salamatof is a federal actor, and its formulation of a map resolving 14(c) claims "federal action," then Salamatof would be performing functions similar to that of an administrative agency. An agency may not deprive a person of property without some kind of hearing. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The kind of hearing that due process requires generally involves consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and third, the agency's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Goldberg v. Kelly*, 397 U.S. 254, 263–71, 90 S.Ct. 1011, 1018–22, 25 L.Ed.2d 287 (1970). A final determination of what process is due would also require a determination of whether the formulation of a map is more akin to agency rule making or adjudication, since this determination would influence the nature of the notice, hearing, and scope of available judicial review. *See, e.g., State v. Hebert*, 743 P.2d 392, 396 and n. 4 (Alaska App.1987), *aff'd*, 803 P.2d 863 (Alaska 1990)

notice should have been given to Ogle of the village's filing of the map and the need to seek judicial review within a definite period or forever be barred from any judicial relief. In order to address these issues in context, it is necessary to review the applicable provisions of the Alaska Native Claims Settlement Act ("ANCSA").

The United States Congress enacted ANCSA in 1971. 43 U.S.C. §§ 1601–1629(a) (1995). ANCSA extinguished the Native people of Alaska's claims to aboriginal land title, and in return federal lands and other consideration were transferred to Alaska Natives. In order to accomplish this purpose, the United States Congress created regional and village corporations that were intended to receive the lands conveyed.

Included in ANCSA are a number of provisions designed to protect the rights of those with existing rights to land conveyed under ANCSA. Existing leases, homesteads, mining claims, and similar sites are protected. *See* 43 U.S.C. §§ 1613(g), 1621(b), 1621(c). Another provision, commonly known as section 14(c), requires the conveyance of lands by the village corporation to individuals on the basis of their occupancy for a particular purpose rather than their common law property rights. *See* 43 U.S.C. § 1613(c). The uses deemed sufficient to give rise to such a claim include claims that the property was a primary place of residence, a primary place of business, or a subsistence campsite. 43 U.S.C. § 1613(c)(1).

To facilitate the transfer of section 14(c) properties to lawful claimants, the Secretary of the Interior enacted regulations requiring the survey of the lands claimed by the villages. *See* 43 C.F.R. § 2650.5–4. This regulation requires village corporations to file a map delineating its land selections, including tracts that are to be reconveyed under section 14(c). *Id.* The map is then used by the Bureau of Land Management ("BLM") as a

"plan of survey." Section 2650.5–4 provides, in pertinent part:

§ 2650.5–4 Village Surveys.

(a) Only the exterior boundaries of contiguous entitlements for each village corporation will be surveyed ...

(b) Surveys will be made within the village corporation selections to delineate those tracts required by law to be conveyed by the village corporations pursuant to section 14(c) of the Act.

(c)(1) The boundaries of the tracts described in paragraph (b) of this section shall be posted on the ground and shown on a map which has been approved in writing by the affected village corporation and submitted to the Bureau of Land Management. Conflicts arising among potential transferees identified in section 14(c) of the Act, or between the village corporation and such transferees will be resolved prior to submission of the map.

(2) ... No surveys shall begin prior to final written approval of the map by the village corporation and the Bureau of Land Management. After such written approval, the map will constitute a plan of survey. No further changes will be made to accommodate additional section 14(c) transferees, and no additional survey work desired by the village corporation or municipality within the area covered by the plan of survey or immediately adjacent thereto will be performed by the Secretary.

43 C.F.R. § 2650.5–4.

▮▮▮▮ The BLM accepted and approved the filing of Salamatof's map of boundaries on May 14, 1993. Section 1632(b) provides:

Decisions made by a Village Corporation to reconvey land under section 14(c) of the Alaska Native Claims Settlement Act [43 U.S.C.A. § 1613(c)] shall not be subject to judicial review unless such action is initiated before a court of competent jurisdic-

---

(distinguishing between the process that is due when an agency engages in rule making as opposed to adjudication). It is undisputed that Ogle had the right to judicial review of any adverse action by Salamatof. Thus it will have to be determined whether a hearing in court supplies the necessary "hearing" absolving the

village from any need to adopt formal procedures including hearings to resolve disputes over 14(c) claims prior to filing its map. *See, e.g., Mathews,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (distinguishing between situations in which pre and post deprivation hearings are necessary to afford "due process").

tion within one year after the date of the filing of the map of boundaries as provided for in regulations promulgated by the Secretary.

43 U.S.C. § 1632(b). It is undisputed that the § 1632(b) limitations period expired on May 14, 1994, and that Ogle did not make a claim under section 14(c) within the allotted one year period. However, 43 C.F.R. § 2650.5–4 indicates that the determination of section 14(c) claims is a matter left to the village corporations to resolve.[7] In order to resolve disputes, the village must establish a procedure to identify potential 14(c) claimants and consider their claims. Section 14(c) therefore contemplates that the village corporations will provide reasonable notice to 14(c) claimants both prior to and after filing their map of boundaries with the Department of the Interior. Notice prior to the filing is necessary in order to assure that bona fide claims are recognized in the map, and notice

subsequent to the filing of the map is necessary to insure that those whose claims are denied are alerted to their right to judicial review.

Unfortunately, neither ANCSA nor the regulations provide the village with explicit directions regarding the types of notice that must be given by village corporations.[8] Prior to filing their map of boundaries, Salamatof published notice of its reconveyance program under section 14(c) in The Peninsula Clarion for fourteen days and in the Tundra Times in five consecutive weekly issues in 1986. In addition, Salamatof gave a similar notice to its shareholders in a newsletter that it published. After filing its map of boundaries with the Department of the Interior, Salamatof made no further efforts to notify potential 14(c) claimants, though the Department of the Interior adopted a policy whereby it published notice for a single day in two

7. The regulation provides that "conflicts arising among potential transferees identified in section 14(c) of the Act, or between the village corporation and such transferees will be resolved prior to submission of the map." 43 C.F.R. § 2650.5–4(c)(1). Section 1632(b) indicates that judicial review of the "conflict" will follow submission of the map which triggers the time for seeking judicial review. 43 U.S.C. § 1632(b). The disputes must therefore be provisionally resolved prior to judicial review. However, it is not clear whether the village should provisionally address conflicts prior to submitting its map, or whether disputes should be submitted to the Secretary and provisionally resolved by him. The statutes and regulations do not make any provision for dispute resolution by the Secretary, leading this Court to conclude that in the regulations, the Secretary delegated the responsibility for "resolv[ing] disputes prior to submission of the map" to the village. This was the view argued by the parties and adopted by the Court in *City of Seldovia v. Seldovia Native Assoc., Inc.*, A89–252 CV (JKS) (D.Alaska filed June 16, 1989). If we assume that the village is given the responsibility for initially resolving disputes regarding 14(c) claims, then it appears that 43 U.S.C. § 1632(b) would not be the kind of "self executing" statute of limitations described in *Texaco*, 454 U.S. at 533, 536, 102 S.Ct. at 794, 796 (1982), but one in which the federal government's involvement with the statute is substantial enough to implicate the Due Process Clause. *Tulsa*, 485 U.S. at 486–89, 108 S.Ct. at 1345–47.

8. Congress seems to have assumed that the land selections of village corporations would all come from the immediate vicinity of the village where people had lived, hunted, and fished from time

immemorial, and that the village residents would be personally acquainted with all potential section 14(c) claimants. As this Court saw in *Seldovia Native Assoc., Inc. v. Lujan, et al.*, A91–076 CV (JKS) (D.Alaska filed March 11, 1991), there is often insufficient land to meet the villages' allotments in their vicinity, and therefore additional land throughout the state has to be acquired and conveyed. Where, as here, a village must claim land at some distance from the historical village, the likelihood that village members will have personal knowledge of potential claimants diminishes. Needless to say, this vastly complicates the process of providing section 14(c) claimants with reasonable notice.

In their briefs, neither party provides the Court with a map detailing the relationship between the land to which Ogle asserts his reconveyance rights and the primary location of Salamatof Native Association. Where the land in issue is in the vicinity of the village and all claimants use the village as a base of operations to get mail and supplies and travel to and from the outside, notice posted in the post office or general store may be sufficient if it is coupled with personal notice to those known to the village members. When the land in question may have no historical or geographical connection with the village, and claimants may have no reason to regularly visit the village, notices posted in the village may have no likelihood of reaching claimants. By the same token, claimants might not associate the land they claim with a village which might be far away. Of course, where the village has no past association with or even easy access to the land affected, its burden of discovering potential claimants and giving them notice is increased.

newspapers, and also sent notice for posting in the Kenai Post Office.[9]

## II. *Constitutional Due Process*

 Congress is generally under no obligation to create a property right in any private individual or group. Where, however, Congress creates rights, as it did in the case of 14(c) claimants, the government must make reasonable efforts to alert the possessor of such rights to the risk of loss. The administration of Native land claims is a power traditionally exclusively reserved to the government. When Congress and the Secretary delegated to Salamatof initial responsibility to resolve section 14(c) claims, it became an instrument of the federal government, obligated under the Fifth Amendment to give adequate notice before depriving anyone of his or her property rights. *See Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974), *reh'g denied*, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985); *McGraw v. City of Huntington Beach*, 882 F.2d 384, 389 (9th Cir.1989); *Dorr v. Butte County*, 795 F.2d 875, 877 (9th Cir.1986). In *Loudermill*, the Court stated:

> The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures.... The right to due process 'is conferred not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest ... it may not constitutionally authorize the deprivation of such an interest, once con-

ferred, without appropriate procedural safeguards.'

470 U.S. at 541, 105 S.Ct. at 1493. In the absence of proceedings that comport with due process, the property rights that Congress granted to 14(c) claimants through ANCSA would be rendered meaningless.

 Prior to an action which will affect an interest in property protected by the Due Process Clause of the Fourteenth Amendment, a government actor must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657. Elaborating upon the principle announced in *Mullane*, the Supreme Court has more recently held that notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, if the party's name and address are reasonably ascertainable. *Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712.

 The Court cannot yet determine whether Ogle's identity as a 14(c) claimant was known or reasonably ascertainable. Further briefing from the parties will be required to determine whether "reasonably diligent efforts" would have identified Ogle and revealed his claim. *Tulsa*, 485 U.S. at 485, 108 S.Ct. at 1345. Ogle's repeated notification to Salamatof of his ongoing allotment dispute with the BLM may be relevant to this analysis.[10] Both parties should analyze whether Ogle was provided with actual notice, constructive notice, or notice of facts that would have put him on inquiry notice of the need to file his claim. If the Department of the Interior gave Ogle actual notice of the

---

9. The Department of the Interior may have had an independent duty to give notice to potential 14(c) claimants, and inadequate performance of that duty may impair the finality of the map. However, the government is not a party to this case. Nonetheless, the Department of the Interior's action is significant in that its publication and posting of notice may have accommodated for otherwise inadequate notice by Salamatof by giving actual, inquiry, or constructive notice to Ogle.

10. A limitations period should be tolled when an injured person has several legal remedies and he reasonably, and in good faith, pursues one. *See Hinton v. Pac. Enter.*, 5 F.3d 391, 396 (9th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1833, 128 L.Ed.2d 462 (1994). If Ogle's allotment claim is an alternate remedy to his reconveyance claim, perhaps Ogle's pursuit of this claim "tolled" the 43 U.S.C. § 1632(b) limitations period. The Court expresses no opinion on that issue.

official filing date and the running of the one-year statute of limitations, then the village's failure to give actual notice may have been harmless error.

 Particularly extensive efforts to provide effective notice may often be required when the government is aware of a party's inexperience or incompetence. *See, e.g., Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 13–15, 98 S.Ct. 1554, 1562–64, 56 L.Ed.2d 30 (1978).[11] Phrased another way, "When notice is a person's due, process which is a mere gesture is not due process." *Mullane,* 339 U.S. at 315, 70 S.Ct. at 657. Questions as to the form that notice must take are distinct from the question of whether service must be personal, by mail, or by publication.

### III. Salamatof had no Fiduciary or Trust Duty to Ogle

 Section 14(c) requires village corporations, upon receipt of a patent, to "first convey" to any Native or non-Native occupants title to the tract they occupied on December 18, 1971. 43 U.S.C. § 1613(c). Ogle claims that this created a trust, under which village corporations received and held title to section 14(c) lands for the benefit of section 14(c) claimants. Ogle ignores the ruling of the court in *Lee v. United States,* 629 F.Supp. 721, 728 (D.Alaska 1985). In *Lee,* the court stated that ANCSA's language, structure, and legislative history all demonstrate that Congress intended to provide a "comprehensive and final resolution of all issues relating to Native land claims in Alaska." *Lee,* 629 F.Supp. at 728. The court expressly found that common law remedies, such as a constructive trust theory, were nothing more than an attempt to alter the comprehensive legislative scheme adopted by Congress. *Id.* at 729. Ogle and Salamatof are adversaries, not fiduciaries. The court's

holding in *Lee* makes clear that a trust will not be created by implication.

### IV. There is no Monetary Claim for Breach of 14(c)

 Ogle also contends that even if the statute of limitations is determined to constitute an absolute bar to Ogle's section 14(c) claim, Ogle still has a cause of action against Salamatof for the wrongful loss of his section 14(c) claim. Ogle's argument runs contrary to the express purpose and intent of ANCSA to promptly resolve claims without litigation. 43 U.S.C. § 1601. Again, turning to *Lee* and its stance on the creation of common law surrounding ANCSA, this cause of action does not fill a gap, but rather, creates a new and unwarranted cause of action. This Court refuses to imply or create a cause of action on the part of a 14(c) claimant against an ANCSA corporation.

### CONCLUSION

 Ideally, potential section 14(c) claimants would be notified of their property interest by the village corporation during the village corporation's survey of its lands. The 14(c) claimant and the village corporation would seek informal resolution of the claim, and if resolution at the village level was unsuccessful, seek judicial review in the short time permitted after filing the map of boundaries. Salamatof's filing of the map of boundaries is most properly viewed as the village's last and final decision regarding pending claims. The filing would properly trigger petitions for judicial review by anyone whose claim was not honored. Salamatof is an Alaska business organized for profit and is not an impartial agency. There is no basis for according a special level of deference, such as applying an arbitrary and capricious standard, to decisions made by the village corporation. Judicial review must be *de novo.*

11. The needs of the recipients of notice must be balanced against the needs of the entity providing notice. Courts have recognized the impossibility of setting up a rigid formula as to the kind of notice that should be given. *See Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956). However, it should be noted that many reconveyance claimants live in the "bush" and have limited access to legal advice. While not binding upon this Court, the Alaska Supreme Court has remarked that the proper tailoring of notice to the capacities and circumstances of indigent bush defendants requires the communication of substantially more information regarding the methods by which such individuals may respond and defend their interests. *Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352, 1357 (Alaska 1974).

Thus, there are two points at which notice is required to comport with due process: (1) at the time the village is finalizing its land selections and preparing its map, so that claims may be made and if possible informally resolved; and (2) after filing its map in order to trigger the statute of limitations. The Court cannot yet decide whether Ogle received the notice that was due from Salamatof prior to its filing the map of boundaries with the Department of the Interior. Nor can the Court yet determine whether the notice afforded by the Department of the Interior alerted Ogle to the running of the one-year statute of limitations. At a minimum, the Court will require further briefing from the parties. It is possible that a factual hearing will eventually be necessary.

**IT IS THEREFORE ORDERED:**

The motion to dismiss at **Docket No. 15** is **DENIED IN PART AND GRANTED IN PART.** Ogle's state claims are dismissed with prejudice. His federal due process claims require further proceedings. The requests for oral argument at **Docket Nos. 22 & 23** are **DENIED.**