Walter LORD, Plaintiff,

v.

Bruce BABBITT, Secretary of the United States Department of the Interior, and The United States of America, Defendants.

No. F94–0011 CV (JKS).

United States District Court, D. Alaska.

Nov. 5, 1997.

Reconsideration Denied Jan. 20, 1998.

Robert A. Sparks, Fairbanks, AK, Robert S. John, Fairbanks, AK, for plaintiff.

Dean Dunsmore, Environment & Natural Resources, Dept. of Justice, Anchorage, AK, for defendant Bruce Babbit.

### ORDER

SINGLETON, Chief Judge.

Walter Lord ("Lord") brings this action seeking to establish his right to a Native Allotment in the vicinity of Fairbanks, Alaska. Lord filed his initial complaint on May 24, 1994. Previously, this Court denied the defendants' motion to dismiss, holding that (1) the Court has jurisdiction over this action pursuant to 25 U.S.C. § 345 and 28 U.S.C. § 1353; (2) the six year statute of limitations pursuant to 28 U.S.C. § 2401(a) applies; (3) the State of Alaska is not an indispensable party; and (4) although the six year statute of limitations applies, the parties failed to squarely address the issue of equitable tolling. *See Lord v. Babbitt,* 943 F.Supp. 1203 (D.Alaska 1996); Docket No. 77 (order).

There are several dispositive motions presently before the Court and the parties have now adequately addressed the issue of equitable tolling. The defendants (collectively "the government") argue that the running of the statute of limitations deprives this Court of jurisdiction over the majority of Lord's causes of action. The government also argues that Lord's action to quiet title must be dismissed for want of jurisdiction. Finally, the government moves for partial summary judgment dismissing Lord's claims for judicial review pursuant to the Administrative Procedure Act of decisions of the Bureau of Land Management set forth in letters dated January 14, 1994, and May 17, 1994.

The Court has reviewed the record and the parties' briefing and concludes that the parties have sufficiently the issues to the extent that oral argument will not be helpful. D.Ak. LR 7.1(i); *see also United States v. Cheely,* 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992) (discussing oral argument in criminal context but principles remain applicable), *aff'd,* 36 F.3d 1439 (9th Cir.1994).

### FACTUAL BACKGROUND

On May 24, 1957, Lord filed an Alaska Native Allotment application for a parcel of land on the Tanana River in Fairbanks, Alaska, pursuant to the Alaska Native Allotment Act of 1906, 43 U.S.C. §§ 270–1 through 270–3 (1970) (repealed 1971). Docket No. 101 at ¶ 4 (third amended complaint). In his application, Lord stated that he had as of May 24, 1957, commenced his occupation of the lands sought in that application. Admin. Rec. Vol. I at 2. The Department of the Interior, Bureau of Land Management ("BLM") sent Lord a notice to his last known address, General Delivery, Fairbanks, Alaska, on January 4, 1963, informing Lord that he needed to send to BLM proof of his use and occupancy of the land by May 24, 1963, to prevent his allotment application from expiring. *Id.* at 12. Lord did not respond. Lord claims that he did not personally receive the notice because it was sent to General Delivery, Fairbanks, Alaska, instead of to the mailbox in Fairbanks at 2 mile Peger Road where Lord was receiving mail at the time. Docket No. 153. Third Aff. of Walter Lord at ¶ 1. The government, however, points out that "General Delivery, Fairbanks, Alaska" was the address used by BLM because Lord put that address on his allotment application. Admin. Rec. Vol. I at 2.

On May 31, 1963, BLM again sent a notice to Lord's last known address, General Delivery, Fairbanks, Alaska, stating that his allotment application had been terminated due to his failure to submit proof of use and occupancy by May 24, 1963, which would have been within six years of the filing of his application. Admin. Rec. Vol. I at 14. The notice was sent by certified mail, and BLM received a return receipt indicating its delivery. *Id.* at 13. The signature on the return receipt was "Etta Mae Lord." *Id.*

In his first affidavit, dated September 23, 1994, Lord stated that he did not personally receive the notice but that his wife, Etta Mae Lord, had "apparently" received it. Docket No. 123, Ex. 2 at ¶ 6 (First Aff. of Walter Lord). Lord further claimed that he was not aware that his wife had received the notice "until as long as many years after it was signed for." *Id.* In an affidavit given on June 3, 1997, Etta Mae Lord stated that she does not recall ever having seen BLM's decision dated May 31, 1963. Docket No. 123,

Ex. 7 at ¶ 3 (Aff. of Etta Mae Lord). Lord never appealed the 1963 BLM decision.

In 1971, the Department of the Interior proposed a withdrawal of the land at issue in this case for use as a gravel source by the Alaska Railroad, Department of Transportation. 36 Fed.Reg. 8965–66 (May 15, 1971); Admin. Rec. Vol. III at 52–53. The Alaska Railroad subsequently canceled its application for withdrawal of the lands at issue. 38 Fed.Reg. 18049–50; Admin. Rec. Vol. III at 128–29. As noted in the *Federal Register,* the segregative effect of this cancellation was deemed to have ceased as of 10 a.m. on July 20, 1973.

By letter dated April 20, 1973, the State of Alaska ("State") amended its pending selection to include the lands at issue in this case. Admin. Rec. Vol. V at 14. The State thereafter published notice of this application in the *Fairbanks Daily News–Miner* on five separate occasions in April and May, 1973. *Id.* at 18.

A letter in Lord's handwriting dated August 28, 1973, was sent to the Bureau of Indian Affairs' Land Claims Department. Docket No. 138, Ex. 4 at 6. The letter was date stamped received on August 31, 1973. *Id.* In this letter, Lord stated "I would like to see you very soon in regards to my claim filed in 1957 ... Since I filed my claim the State of Alaska and the Alaska Railroad have both tryed [sic] to get my land." *Id.*

A decision tentatively approving conveyance of the lands at issue in this case to the State was issued on February 19, 1976. Admin. Rec. Vol. V at 33–34. Subsequently, the Alaska National Interest Lands Conservation Act ("ANILCA"), Pub.L. No. 96–487 (1980) (*codified at* 16 U.S.C. §§ 3101–3233, 43 U.S.C. §§ 1606, 1631–41), was enacted. Pursuant to ANILCA, "all right, title and interest of the United States" in such lands was deemed to have vested in the State "as of the date of the tentative approval." 43 U.S.C. § 1635(c). On November 12, 1985, the parcel of land sought in Lord's allotment application was patented to the State under patent No. 50–86–0043.

On approximately May 1, 1984, George Tobuk of Tanana Chiefs Conference had a telephone conversation with Kayla Copeland of BLM regarding the status of Lord's allotment application. Admin. Rec. Vol. I at 36, 39. No further communication from or on behalf of Lord was received by BLM until Lord's counsel phoned BLM in December, 1993, and followed up this telephone conversation with a letter dated December 21, 1993. *Id.* at 55. In this letter, Lord's counsel inquired as to "what the status of Mr. Lord's allotment is and whether your office is able to issue the allotment at this time." *Id.*

BLM responded to this inquiry by letter dated January 24, 1994. *Id.* at 56–57. In its response BLM described the history of Lord's allotment application, stated that it had been terminated in 1963 for failure to submit proof of use and occupancy, and stated that the lands sought in Lord's application had subsequently been conveyed to the State. *Id.* at 57. BLM's letter explicitly concluded that "application of F–014623 will remain closed and will not be reinstated." *Id.* at 56.

BLM thereafter received additional correspondence on behalf of Lord from his counsel, *id.* at 62, 65–66, 76, and one telephone call. *Id.* at 68. In this correspondence, Lord's counsel expressed dissatisfaction with BLM's January 24, 1994, letter, argued that Lord was denied due process when his allotment application was terminated, and further stated that Lord's allotment application was in fact legislatively approved. *Id.* at 65–66. BLM responded by letter dated May 17, 1994. *Id.* at 96–98. BLM's letter stated that "the 'legislative approval' provision of § 905 of ANILCA" was not applicable to Lord's allotment application. *Id.* at 97.

Lord claims that it was only after his attorney received letters from BLM in 1994 that he realized that his application would not be reinstated. Docket No. 123, Ex. 2 at ¶ 7 (First Aff. of Walter Lord). Furthermore, Lord claims that it was not until he received the answer to his initial complaint in the instant case that he realized the United States had conveyed the land to the State. *Id.*

## STATUTORY BACKGROUND

In 1887, Congress passed the General Allotment Act, 25 U.S.C. § 334, which provided

Indians not living on a reservation or whose tribe did not have a reservation with an opportunity to apply for a 160–acre allotment of unsurveyed and not otherwise appropriated land of the United States. *Shields v. United States,* 504 F.Supp. 1216, 1217 (D.Alaska 1981), *aff'd,* 698 F.2d 987 (9th Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 73, 78 L.Ed.2d 86 (1983). Because the General Allotment Act was not clear as to whether it applied to Alaska Natives, Congress enacted the Alaska Native Allotment Act which allowed Alaska Natives to make applications for allotments of up to 160 acres. Alaska Native Allotment Act of 1906, 34 Stat. 197, *as amended by* Act of August 2, 1956, 70 Stat. 954; 43 U.S.C. §§ 270–1 through 270–3 (1970) (repealed 1971). It was under the Alaska Native Allotment Act that Lord applied for the allotment which is in dispute in this case.

When applying for allotments, Alaska Natives were required to provide proof that they had used and occupied certain pieces of land for a period of five years. This five year requirement was first promulgated in the regulations in 1938 (43 C.F.R. § 67.13 (1938)). Later, this requirement was included in the Alaska Native Allotment Act when the Act was amended on August 2, 1956, 70 Stat. 954, 43 U.S.C. § 270–3 (1970), to provide that:

> No allotment shall be made to any person under this Act until said person has made proof satisfactory to the Secretary of the interior of substantially continuous use and occupancy of the land for a period of five years.

By this amendment, Congress required that an applicant must submit proof of five years use and occupancy in order to be entitled to an allotment. Congress did not, however, provide when proof of use and occupancy must be filed. Instead the statute provided that the Secretary of the Interior could prescribe rules for implementation of the statute. *See* 43 U.S.C. § 270–1 (1970).

The Secretary of the interior on December 6, 1958, published regulations applicable to Lord's application. 23 *Federal Register* at 9484–85, *codified at,* 43 C.F.R. §§ 67.1 to 67.11 (1963). These regulations provided in part:

> An allotment will not be made until the applicant has made satisfactory proof of substantially continuous use and occupancy of the land for a period of five years and the lands are surveyed by the Bureau of Land Management ...

43 C.F.R. § 67.7 (1963). This proof could be submitted either with the application, if the applicant had by that time already completed the required five years of use and occupancy, or after the filing of the application once the required use and occupancy had been completed. *Id.* The regulations also provided that if an applicant did not file the requisite proof of use and occupancy within six years of the filing of an allotment application, that application was terminated. 43 C.F.R. § 67.5(f). Further, the regulations provided for the situation, such as in this case, where the application was filed prior to publication of the regulations:

> If the application was filed prior to the effective date of this paragraph, the application will be terminated under this paragraph only by decision of the authorized officer after appropriate notice to the applicant, granting him a reasonable time within which to file proof of continuous use and occupancy of the land as required by the regulation in this part.

*Id.* Since Lord's application was filed on May 24, 1957, the six year period for filing of proof of use and occupancy expired on May 24, 1963.

The Alaska Native Allotment Act was repealed by the Alaska Native Claims Settlement Act ("ANCSA"), Pub.L. No. 92–203, 85 Stat. 688 (1971) (*codified at* 43 U.S.C. §§ 1601–1624). ANCSA extinguished the Native people of Alaskans claims to aboriginal land title, and, in return, federal lands and other consideration were transferred to Alaska Natives. To accomplish this, regional and village corporations were created which were intended to receive the lands conveyed. A number of provisions were included in ANCSA, however, to protect those with existing rights. For instance, although ANCSA repealed the Alaska Native Allotment Act, there was an exception, or savings

clause, for those allotment applications "pending before the Department of the Interior on December 18, 1971." 43 U.S.C. § 1617(a). To further clarify, Congress enacted section 905 of ANILCA on December 2, 1980, which contains a savings clause for allotment applications filed pursuant to the Allotment Act of 1906 that were "pending before the Department of the interior on or before December 18, 1971." 43 U.S.C. § 1634(a) (generally referred to as "section 905 of ANILCA").

## DISCUSSION

### I. Summary of Claims

Although Lord's claims all possess a common nucleus of law and fact. Lord's third amended complaint is lengthy, convoluted, and unartfully pled. *See* Docket No. 101 (third amended complaint). For convenience, the Court has broken down Lord's various causes of action as follows: [1]

First Cause of Action: A challenge to the validity of 43 C.F.R. § 67.5(f) (1963). Third Amended Complaint ¶ 8.

Second Cause of Action: Defendants violated the provisions of 43 C.F.R. § 67.5(f). Third Amended Complaint ¶ 9.

Third Cause of Action: Defendants have not adjudicated Plaintiff's entitlement to an allotment pursuant to the Alaska Native Allotment Act, 43 U.S.C. § 270–1 through 270–3 (1970). Third Amended Complaint ¶ 9.

Fourth Cause of Action: Defendants' May 31, 1963, decision to terminate his allotment application was invalid. Third Amended Complaint ¶¶ 10–11.

Fifth Cause of Action: The Secretary of the Interior was required pursuant to section 905 of ANILCA to deem that plaintiff's allotment application was legislatively approved. Third Amended Complaint ¶ 12 and first and second paragraphs 21.

Sixth Cause of Action: If plaintiff's allotment application was not legislatively approved by operation of section 905 of ANILCA, the Secretary of the Interior was nonetheless required pursuant to section 905 to adjudicate plaintiff's entitlement to the allotment sought in that application. Third Amended Complaint ¶¶ 12, 18, 20 and second paragraph 21.

Seventh Cause of Action: The United States had no authority to convey title to the lands sought in plaintiff's allotment application to the State of Alaska. Third Amended Complaint ¶¶ 15–16.

Eighth Cause of Action: To compel defendants to recover the lands sought in his allotment application and reconvey those lands to plaintiff. Third Amended Complaint ¶¶ 17, 20.

Ninth Cause of Action: To quiet title in plaintiff to the lands sought in his allotment application. Third Amended Complaint ¶ 1.

### II. Partial Judgment on the Pleadings

Lord alleges that this Court has jurisdiction over this action, in part, pursuant to 28 U.S.C. § 1346(f) and 28 U.S.C. § 2409a, and states that he seeks to "quiet title to an Alaska Native allotment." Docket No. 101 at ¶ 1 (third amended complaint). Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure the government moves for a judgment on the pleadings dismissing Lord's action to quiet title under 28 U.S.C. §§ 1346(f) and 2409a.[2] Docket Nos. 105 (motion), 115 (reply). The motion is opposed. Docket No. 112. Judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 670 (9th Cir.1993).

A party bringing an action in federal court bears the burden of establishing the court's jurisdiction. The United States and its agen-

---

**1.** In its opposition to Lord's motion for summary judgment, the government attempted to identify Lord's various causes of action. *See* Docket No. 138 at 2–4. The Court has examined the government's list, compared it to Lord's third amended complaint, and finds the list to be reliable and accurate. Further, Lord has not challenged the

government's list in any subsequent filing with this Court.

**2.** The court has characterized this claim as Lord's Ninth Cause of Action.

cies may not be sued, absent a waiver of sovereign immunity. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Congressional waivers of the sovereign immunity of the United States "must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quotations and citations omitted). Therefore, when a party seeks to sue the United States, that party must establish that Congress has waived sovereign immunity and permitted the suit.

■ The Quiet Title Act, Pub.L. No. 92–562, 86 Stat. 1176 (*codified at* 28 U.S.C. § 2409a), allows the United States to "be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a). Title 28 U.S.C. § 1346(f) provides that such actions are to be in the district court:

> The district courts shall have exclusive original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States.

In other words, 28 U.S.C. § 1346(f) is the jurisdiction-vesting counterpart to 28 U.S.C. § 2409a's waiver of sovereign immunity.

The government argues that while the United States waives sovereign immunity pursuant to the Quiet Title Act, that waiver is provided only with respect "to real property in which the United States claims an interest," 28 U.S.C. § 2409a(a), or with respect to "an estate or interest in real property in which an interest is claimed by the United States." 28 U.S.C. § 1346(f). The government takes the position that since the United States has already conveyed full title and interest in the lands at issue in this case to the State, it no longer has a claim to the

property. This argument is bolstered by the fact that both this Court and Lord, in earlier proceedings and briefings, have repeatedly acknowledged that any interest the United States had in the property has been conveyed to the State. *See, e.g.,* Docket Nos. 101 at 5 (third amended complaint), 77 at 3 (order denying defendants' motion to dismiss). In order for the Quiet Title Act to apply, the plaintiff must set forth the "right, title or interest claimed by the United States." 28 U.S.C. § 2409a(d). As this element is completely lacking in Lord's pleadings, the government soundly concludes that this Court lacks jurisdiction over any claim against the United States under the Quiet Title Act. *See Bay Sav. Bank, F.S.B. v. Internal Revenue Serv.,* 837 F.Supp. 150, 154 (E.D.Va.1993) ("where the property at issue has been sold, the government no longer 'claims an interest' and section 2409a is not applicable.") (citations omitted).

In opposition to the government's motion for partial judgment, Lord contends that where the government has deprived an individual of his property by administrative wrongdoing, the government cannot avoid this Court's jurisdiction by disposing of the property. *See Donnelly v. United States,* 850 F.2d 1313, 1318 (9th Cir.1988). However, in *Donnelly,* the Ninth Circuit Court of Appeals did not find that it had jurisdiction to quiet title under statutes other than 28 U.S.C. § 2409a. Rather, the Ninth Circuit merely held that the fact that the title of the United States had already been conveyed to a third party did not preclude review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, of the propriety of adverse administrative action. *Id.* In its motion for partial judgment on the pleadings, the government is not seeking dismissal of Lord's claim for review of BLM's administrative action. The government seeks dismissal only of that portion of Lord's third amended complaint which seeks a judgment quieting title between Lord and the United States.[3]

---

**3.** Moreover, *Donnelly* is inapplicable because the conveyance of the property at issue in this case was not made by an administrative action of the Executive (as was the case in *Donnelly* ), but was a legislative conveyance made by Congress (i.e., all title and interest of the United States in land sought in Lord's allotment application was conveyed to the State as of February 19, 1976, by Congress). Actions of Congress are not reviewable under the Administrative Procedure Act. 5 U.S.C. § 701(b)(1)(A).

■ As an alternative argument, Lord asserts that even if the conveyance of the property to the State bars jurisdiction under the Quiet Title Act, this Court has jurisdiction of Lord's quiet title claim pursuant to 5 U.S.C. § 702, and under 25 U.S.C. § 345. However, the Quiet Title Act is the exclusive means by which a party may seek to quiet title as against the United States. *Block v. North Dakota*, 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *State of Alaska v. Babbitt*, 75 F.3d 449, 452 (9th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996); *Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir.1996), *cert. denied*, — U.S. —, 118 S.Ct. 54, 139 L.Ed.2d 18 (1997). Therefore, 5 U.S.C. § 702 and 25 U.S.C. § 345 do not provide this Court with subject matter jurisdiction over a quiet title action against the United States.

Jurisdiction under the Quiet Title Act lies only "to adjudicate a disputed title to real property in which the United States claims an interest . . . ." 28 U.S.C. § 2409a(a). The United States claims no interest in the property at issue in this case. Therefore, the government's motion for judgment on the pleadings is granted.

### III. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985); Fed. R.Civ.P. 56. Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party. *Id.*

4. As previously mentioned, the Court determined in an earlier Order that the six year statute of limitations set out in 28 U.S.C. § 2401(a) applies to this case.

### IV. Operation of the Statute of Limitations

The government moves for partial summary judgment dismissing six of Lord's eight remaining causes of action as barred by the applicable six year statute of limitations.[4] The government's arguments are set forth in two different motions. First, the government moves for partial summary judgment dismissing Lord's action insofar as Lord challenges the validity of 43 C.F.R. § 67.5(f) (1963).[5] Docket Nos. 107 (motion), 129 (reply). The motion is opposed. Docket No. 123. Second, the government moves for partial summary judgment dismissing what the Court has characterized as Lord's Second, Third, Fourth, Seventh and Eighth causes of action. Docket Nos. 137 (motion), 162 (reply). Again, the motion is opposed. Docket No. 154.

### A. *Lord's Challenge to the Validity of 43 C.F.R. § 67.5(f)*

■ Lord alleges that "[t]he regulations contained at 43 C.F.R. § 67.5(f) exceed and are contrary to the statutory authority of the Department of the Interior and are otherwise null and void." Docket No. 101 at ¶ 8 (third amended complaint). There currently is no regulation codified at 43 C.F.R. § 67.5(f). The regulation to which Lord is referring was contained in regulations published in 23 *Federal Register* at 9484–85 (Dec. 6, 1958), *codified at*, 43 C.F.R. § 67.1 to 67.11 (1959). Section 67.5(1) provided that if an applicant did not file the requisite proof of use and occupancy within six years of the filing of an allotment application, "[the applicant's] application for allotment will terminate without affecting the rights of the applicant gained by virtue of his occupancy of the land, or his rights to make another application." 43 C.F.R. § 67.5(f) (1963). Further, the regulations provided for the situation, such as in this case, where the application was filed prior to publication of the regulations:

5. The court has characterized this claim as Lord's First Cause of Action.

If the application was filed prior to the effective date of this paragraph, the application will be terminated under this paragraph only by decision of the authorized officer after appropriate notice to the applicant, granting him a reasonable period within which to file proof of continuous use and occupancy of the land as required by the regulation in this part.

*Id.*[6]

A cause of action accrues when the plaintiff knew or should have known of the wrong and was able to commence an action based upon that wrong. *Shiny Rock Mining Corp. v. United States,* 906 F.2d 1362, 1364 (9th Cir.1990). Any challenge to § 67.5(f) is subject to the six year statute of limitations found in 28 U.S.C. § 2401(a). *Sierra Club v. Penfold,* 857 F.2d 1307, 1315 (9th Cir.1988). The Ninth Circuit Court of Appeals addressed the issue of when this statute of limitations commences to run with respect to federal regulations in *Wind River Mining Corp. v. United States,* 946 F.2d 710, 715–16 (9th Cir.1991). As stated in that decision:

If a person wishes to challenge a mere procedural violation in the adoption of a regulation or other agency action, the challenge must be brought within six years of the decision. Similarly, if the person wishes to bring a policy based facial challenge to the government's decision, that too must be brought within six years of the decision.

*Id.* at 715. If, however, a plaintiff wishes to challenge the substance of a decision as exceeding constitutional or statutory authority, "[t]he challenge must be brought within six years of the agency's application of the disputed decision to the challenger." *Id.* at 715–16.[7] It appears to be the latter challenge (exceeding statutory authority) which Lord wishes to make.

The government argues that delivery of BLM's May 31, 1963, decision to Lord's wife was proper. Pursuant to the regulations of the United States Post Office, Lord's wife was an authorized agent upon whom delivery of this notice could lawfully be made. 39 C.F.R. §§ 44.2, 58.5 (1962); 39 C.F.R. §§ 44.2, 58.5 (1966). The government asserts that these Post Office regulations are substantive in nature and thus create law. *See Southern California Edison Co. v. Federal Energy Regulatory Comm'n,* 770 F.2d 779, 783 (9th Cir.1985). Therefore, as a matter of federal law, Lord's wife was his agent. Actual notice to a party's agent is actual notice to that party. *Morrow Crane Co. v. Affiliated FM Ins. Co.,* 885 F.2d 612, 614–15 (9th Cir.1989). Accordingly, the government argues that Lord was provided with actual notice of his allotment application's termination by June, 1963, and any challenge by Lord to § 67.5(f) should have been raised within six years of that notice.

Lord contends that the government failed to provide him with actual notice of the various actions taken concerning his allotment, thereby violating due process and mandating the tolling of any statute of limitations. *See* Docket No. 123 at 14–19 (opposition). Due process normally requires notice and an opportunity to be heard. Where any proceeding will finally determine a person's property rights, he is entitled to notice reasonably calculated, under all of the circumstances, to apprise him of the pendency of the proceeding and an opportunity to present his claim or objections. *Tulsa Professional Collection*

---

**6.** Lord proposes a unique reading of § 67.5(1). Relying upon the phrase "without affecting the rights of the applicant gained by virtue of his occupancy of the land or his rights to make another application," Lord contends that BLM's actions in 1963 did not "adversely affect" his rights, and asserts that there was no basis for filing an appeal. *See* Docket No. 123 at 13–14 (opposition). Lord argues that instead, consistent with the regulations, he retained his preference rights to the allotment, relating back to the date of his initial entry in 1957. *See State of Alaska v. Babbitt,* 38 F.3d 1068, 1073, 1075–76 (9th Cir.1994). Lord's reading of § 67.5(f) is contrary to the regulation's plain meaning and would render the regulation virtually meaningless. Moreover, BLM's 1963 notice of termination letter expressly stated "the application for allotment is terminated." Admin. Rec. Vol. I at 14.

**7.** In other words, any challenge to a procedural violation in the adoption of a regulation must be brought within six years of the adoption of the regulation, and any substantive challenge to a regulation must be brought within six years of application of the regulation to the party wishing to challenge the regulation.

*Services Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). What is "reasonable notice" depends upon all of the circumstances and requires a delicate balancing of the people's interest in a final resolution of disputes and the claimant's right to protect his properly. *Id.; see also Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

Lord relies upon *Ogle v. Salamatof Native Ass'n, Inc.,* 906 F.Supp. 1321 (D.Alaska 1995), to support his position. In *Ogle,* this Court stated that "[a]ctual notice is required as a precondition to a proceeding which will adversely affect the property interests of any party if its name and address are reasonably ascertainable." *Ogle,* 906 F.Supp. at 1327. Lord asserts that BLM's May 31, 1963, decision did not inform him of any right to appeal or otherwise request a hearing, and further asserts that BLM failed to follow its own regulations concerning pre-deprivation notice. *See* Docket No. 123 at 15–16 (opposition).

However, BLM's decision expressly stated that Lord's allotment application was terminated:

> Accordingly, the application for allotment is terminated and the case file closed of record in this office. This decision does not affect the rights of applicant to make another application (43 CFR 67.5(f)).

Admin. Rec. Vol. I at 14. The decision also expressly set forth the grounds upon which it was based. *Id.* Moreover, pursuant to the published regulations applicable at that time, Lord had a right to an administrative appeal of the decision first to the Director of BLM, 43 C.F.R. §§ 67.9, 221.1 (1963), and from the Director of BLM to the Secretary of the Interior, 43 C.F.R. § 221.31 (1963). BLM's decision was also suspended during the time period in which an appeal could be filed, and during the pendency of an appeal, if filed. 43 C.F.R. § 221.101 (1963).[8]

This Court's ruling in *Ogle* is readily distinguishable from the present situation. *Ogle* does not decide whether something other than notice delivered by mail is required in the situation present in this case, but merely left that question open for further consideration. *Ogle,* 906 F.Supp. at 1330. Also, *Ogle* involved notice published in the newspaper or posted at the Post Office; it did not involve receipt of an agency decision by an authorized agent of the plaintiff. *Id.* at 1329–30.

Actual notice by mail is sufficient to meet the requirements of due process:

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Mennonite Board of Missions,* 462 U.S. at 800 (emphasis in original). In this instance, there is no record indicating that Lord ever notified BLM that he had a new and different address prior to May 31, 1963. The procedure employed by the Department of the Interior with respect to BLM's May 31, 1963 decision: (1) set forth the basis of BLM's decision to terminate Lord's allotment application; (2) provided for an administrative appeal following which the termination of Lord's allotment application would become final; (3) provided an opportunity for hearing on any issue of fact pertaining to the termination of Lord's allotment application; and (4) sent notice to Lord at his last known address in a manner in which the decision was to be delivered only to Lord or an authorized agent for Lord. This procedure was reasonably calculated to provide Lord with notice of BLM's action.

Lord received through his authorized agent BLM's May 31, 1963, decision terminating his allotment application. As a matter

---

**8.** It is true that BLM's decision did not explicitly notify Lord of his right to an administrative appeal. However, Lord had notice of that right by publication of the regulations in the *Federal Register. See Shiny Rock Mining Corp. v. United States,* 906 F.2d 1362, 1364 (9th Cir.1990) (publication in the *Federal Register* "is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance"); *Government of Guam v. United States,* 744 F.2d 699, 701 (9th Cir.1984) (publication in the *Federal Register* "constituted formal notice to the world").

of law, Lord therefore had actual notice of the application of § 67.5(f) to his allotment application by June, 1963. The time for the filing of any challenge to the validity of § 67.5(f) by Lord expired in June, 1969. Lord's attempt to challenge that regulation in this action (which was not filed until 1994) is barred by operation of 28 U.S.C. § 2401(a).

### B. *Lord's Second, Third, Fourth, Seventh and Eighth Causes of Action*

■ The government also moves for partial summary judgment dismissing Lord's Second, Third, Fourth, Seventh and Eighth causes of action as barred by the six year statute of limitations. Docket Nos. 137 (motion), 162 (reply).[9] The motion is opposed. Docket No. 154. The primary difference between the arguments presented in this motion, and the argument discussed in Section IVA of this Order, is that the government incorporates a broader discussion of the factual circumstances which constitute the history of this case into its motion. In other words, instead of simply arguing that Lord had actual knowledge in June of 1963, the government discusses various different times where it contends that Lord had notice of the action taken by the government concerning his allotment application.

In view of the Court's conclusion that Lord had actual notice of BLM's May 31, 1963, termination letter, it is not necessary to extensively debate whether Lord was provided with notice of the status of his allotment application at the various stages described by the government. If Lord was provided with actual notice of his allotment application's termination in June, 1963, then it is clear that Lord's Second, Third and Fourth causes

of action are also barred by the six year statute of limitations.

In Lord's Seventh Cause of Action, he alleges that the government had no authority to convey title to the lands sought in his allotment application to the State, and in his Eighth Cause of Action, Lord requests that the Court compel the government to recover the lands sought in his allotment application and reconvey those lands to Lord. Both of these claims are also barred by the six year statute of limitations. By December 2, 1980, Lord knew or should have known that the lands at issue in this case had been conveyed to the State. Lord is presumed to have known of the statute which legislatively approved conveyance by Congress of all prior tentative approvals of State selections in 43 U.S.C. § 1635(c)(1). *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947) ("everyone is charged with knowledge of the United States Statutes at Large"); *see also United States v. Markgraf,* 736 F.2d 1179, 1185 (7th Cir. 1984), *cert. dismissed,* 469 U.S. 1199, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985). Any claim challenging the land conveyance should have been brought within six years of the property's conveyance to the State.[10]

### C. *Tolling of the Statute of Limitations*

Lord strenuously argues that the statute of limitations should be tolled in this case. The parties have extensively briefed the issue, and discussion of the matter is warranted. Lord invokes parts of three separate and distinct doctrines: equitable tolling, equitable estoppel, and tolling by fraudulent concealment.

---

**9.** The government's motion also applies the twelve year statute of limitations contained in 28 U.S.C. § 2409a(g) to Lord's Quiet Title Act claim. *See* Docket No. 138 at 9–25 (motion). A ruling on this aspect of the motion is unnecessary in view of the Court's conclusion that it lacks jurisdiction to hear Lord's Quiet Title Act claim. The government also reiterates its argument that review of Lord's challenge to the validity of 43 C.F.R. § 67.5(f) is barred by operation of 28 U.S.C. § 2401(a).

**10.** Moreover, this Court does not appear to have the authority to grant the relief requested in Lord's Eighth Cause of Action. Neither the Secretary of the Interior nor the Department of the Interior has any authority to initiate litigation. That authority lies with the Attorney General of the United States. 28 U.S.C. § 516. Even assuming for the purpose of argument that a fiduciary relationship exists between the government and Lord, that relationship appears insufficient by itself to create a mandatory duty to initiate litigation. *See United States v. Mitchell,* 463 U.S. 206, 224, 217–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (holding that the General Allotment Act created a "bare trust").

## 1. Equitable Tolling

▮▮▮ The doctrine of equitable tolling is properly utilized where without the fault of either party, the plaintiff did not, and could not with due diligence have obtained enough information to sue within the period of the statute of limitations. *In re United Ins. Management, Inc.,* 14 F.3d 1380, 1384 (9th Cir.1994). The Ninth Circuit has made clear that one who fails to act diligently cannot invoke equitable principles to excuse lack of diligence. *Id.* at 1386. Lord received actual notice of BLM's 1963 termination decision by virtue of the decision's delivery to his wife, Lord's authorized agent. As the Court has previously stated, BLM's termination decision clearly set forth the grounds upon which it was based, afforded Lord an opportunity to appeal, and clearly stated that Lord's application was terminated. Therefore, by his failure to contest or appeal BLM's decision, Lord failed to act diligently and is precluded from utilizing the doctrine of equitable tolling. *See, e.g., Nelmida v. Shelly Eurocars, Inc.,* 112 F.3d 380, 384–85 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 158, 139 L.Ed.2d 103 (1997).

## 2. Equitable Estoppel

The Ninth Circuit has distinguished between equitable tolling and equitable estoppel by stating that "equitable tolling applies when the plaintiff is unaware of his cause of action, while equitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams,* 919 F.2d 516, 522 (9th Cir.1990). Typically, a plaintiff attempts to utilize either the doctrine of equitable tolling or the doctrine of equitable estoppel. However, in his third affidavit, Lord states that he understood that the Bureau of Indian Affairs ("BIA") would file proof of his use and occupancy on his behalf. Docket No. 153, Third Aff. of Walter Lord at ¶¶ 7, 14. Lord further alleges that he was also told by BIA that he had nothing to worry about with

respect to his allotment application. *Id.* at ¶ 10. Lord's allegations at least arguably implicate the doctrine of equitable estoppel.

▮▮▮ Assuming that the doctrine of equitable estoppel can be applied to the United States,[11] application of that doctrine requires that the plaintiff must first show the following traditional elements of estoppel:

(1) knowledge of the true facts by the party to be estopped; (2) intent to induce reliance or actions giving rise to a belief in that intent; (3) ignorance of the true facts by the relying party; and (4) detrimental reliance.

*Bolt v. United States,* 944 F.2d 603, 609 (9th Cir.1991) (citing *Watkins v. United States Army,* 875 F.2d 699, 709 (9th Cir.1989) (*en banc* ), *cert. denied,* 498 U.S. 957, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990)); *see also Jaa v. United States Immigration & Naturalization Serv.,* 779 F.2d 569, 571 (9th Cir.1986). Where a party is asserting estoppel against the government, it must also show that the government's actions have amounted to affirmative misconduct. *Gilmore v. Lujan,* 947 F.2d 1409, 1412 (9th Cir.1991); *Bolt,* 944 F.2d at 609; *Seldovia Native Ass'n v. Lujan,* 904 F.2d 1335, 1347 (9th Cir.1990); *Mukherjee v. Immigration & Naturalization Serv.,* 793 F.2d 1006, 1008 (9th Cir.1986). A mere mistake does not rise to the level required for estoppel. *Mukherjee,* 793 F.2d at 1009.

▮▮▮ Lord has not satisfied the basic requirements for invocation of the doctrine of equitable estoppel. First, the representations Lord relies on were made by personnel within BIA. The responsibility for the processing and adjudication of Alaska Native Allotment Act applications lay with BLM, not BIA. *See* 43 C.F.R. Part 67 (1963). Therefore, BIA did not have the authority to make any assurances about the status of Lord's allotment application. *See Saulque v. United States,* 663 F.2d 968, 976 (9th Cir.1981) ("It is well settled that estoppel cannot be invoked against the government because of the unau-

---

**11.** Whether this doctrine can apply to the United States is an issue which has not yet been decided. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 423–24, 110 S.Ct. 2465, 110 L.Ed.2d 387, *rehearing denied,* 497 U.S. 1046,

111 S.Ct. 5, 111 L.Ed.2d 821 (1990); *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

thorized acts of its agents."). BIA's role was limited to certifying whether the applicant was a Native and thus qualified to make an application under the Alaska Native Allotment Act. 43 C.F.R. § 67.5(e) (1963). Any statements which may have been made by BIA, therefore, cannot be used to support a claim of equitable estoppel. Moreover, even if the alleged representations were made by BIA, they certainly do not rise to the level of affirmative misconduct required for any estoppel to lie against the government. *See, e.g., Mukherjee,* 793 F.2d at 1009 (holding as a matter of law that the government actions at issue fell short of the affirmative misconduct necessary for estoppel).

### 3. Tolling by Fraudulent Concealment

Finally, Lord also presents a tolling by fraudulent concealment argument. According to Lord, "it turns out that BLM was actually engaged in a secretive internal agency review of prior closed allotment files ... a clandestine administrative process that has continued into the 1990s." Docket No. 154 at 9 (opposition). Lord contends that the statute of limitations was tolled by reason of this fraudulent concealment. *Id.* at 23, 29–30.

The secretive internal agency review which Lord alleges is somewhat difficult to concisely describe. Lord points to various discovery items provided by the government which indicate that a series of administrative reviews were conducted on Lord's Native Allotment application subsequent to BLM's May 31, 1963, termination notice. *See* Docket No. 154 at 9–14 (opposition). The government does not contest the assertion that it has reviewed Lord's allotment application file on several different occasions since May 31, 1963. Rather, the government maintains that there was nothing clandestine about these reviews, but that they were undertaken as a voluntary action by BLM to go back through its files and determine if various changes in the law or policy were applicable to Lord's application. *See* Docket No. 138 at 19–22 (motion). The government maintains that if it had been determined that Lord's application was required to be reinstated or further adjudication required, Lord would have received notice thereof.

To prevail on a claim of fraudulent concealment, Lord must allege with particularity facts in his complaint showing the circumstances of the alleged concealment. *Grimmett v. Brown,* 75 F.3d 506, 514 (9th Cir.), *cert. granted,* 518 U.S. 1003, 116 S.Ct. 2521, 135 L.Ed.2d 1046 (1996), *cert. dismissed,* —— U.S. ——, 117 S.Ct. 759, 136 L.Ed.2d 674 (1997); *see Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 120 (9th Cir.1980) ("The plaintiff must plead with particularity the circumstances surrounding the fraudulent concealment and state facts showing his due diligence in trying to uncover the facts.") (citation and internal quotation omitted); *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993) (failure to plead facts with particularity requires dismissal). Lord's third amended complaint is devoid of any reference to the government's alleged fraudulent concealment. *See* Docket No. 101 (third amended complaint). This fact alone precludes the possibility of this Court's tolling the statute of limitations on the basis of Lord's fraudulent concealment claim. *See Grimmett,* 75 F.3d at 514; *Conerly,* 623 F.2d at 120; *Neubronner,* 6 F.3d at 672. Furthermore, Lord's tolling by fraudulent concealment argument loses on the merits as well. *See Grimmett,* 75 F.3d at 514–15 (dismissing plaintiff's tolling by fraudulent concealment argument on the merits); *Volk v. D.A. Davidson & Co.,* 816 F.2d 1406, 1415 (9th Cir.1987) ("The doctrine [of fraudulent concealment] is properly invoked only if a plaintiff establishes 'affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief' ") (citation omitted). The allegedly concealed reviews were contained within public records to which Lord had access. At most, BLM only failed to give Lord notice of these reviews; it did not conceal them. *See Grimmett,* 75 F.3d at 514 (plaintiff must both plead and prove that defendants actively misled her).

### V. Lord's Claims Under the Administrative Procedure Act

Finally, the government moves for partial summary judgment dismissing Lord's claims

(1) that the Secretary of the Interior was required pursuant to section 905 of ANILCA to deem that Lord's allotment application was· legislatively approved, and (2) that if Lord's allotment application was not legislatively approved, the Secretary of the Interior was required pursuant to section 905 of ANILCA to adjudicate Lord's entitlement to the allotment sought in that application.[12] Docket Nos. 143 (motion), 171 (reply). The motion is opposed. Docket No. 159.

■ The government presents two distinct arguments in its effort to dispose of these two outstanding claims. First, the government points out that by letters dated January 24, 1994, and May 17, 1994, BLM unequivocally stated that Lord's allotment application was not subject to the legislative approval provisions of section 905 of ANILCA. The government argues that judicial review of BLM's 1994 determinations is barred for lack of finality by reason of Lord's failure to exhaust administrative remedies. That is, Lord was obligated to appeal BLM's decision to the Interior Board of Land Appeals ("IBLA"), and absent such an appeal this Court lacks jurisdiction to hear Lord's claims. Second, the government argues that even if Lord's claims are not so barred, BLM's determinations must be sustained as a matter of law.

The Court is not convinced that it lacks jurisdiction to hear these claims by reason of Lord's failure to exhaust administrative remedies.· Under the Administrative Procedure Act, the challenged agency action must be "final" before it can be subject to judicial review. 5 U.S.C. § 704; *Clouser v. Espy,* 42 F.3d 1522, 1531–32 (9th Cir.1994), *cert. denied, Clouser v. Glickman,* 515 U.S. 1141, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995). However, the Ninth Circuit Court of Appeals has made clear that even if the doctrine of exhaustion suggests that further administrative review would have been appropriate, a court can decline to order such review under certain circumstances:

> [W]here the agency's position on the question "appears already set," and it is "very likely" what the result of recourse to ad-

ministrative remedies would be, such recourse would be futile and is not required. *Clouser,* 42 F.3d at 1533 (quoting *El Rescate Legal Services, Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 747 (9th Cir.1991)). As the government itself has stated in its motion, the Secretary of the Interior has taken the firm position that Lord's application was not legislatively approved. *See* Docket No. 143 at 14–15 ("The Secretary of the Interior interprets 43 U.S.C. § 1634(a)(1) as not approving applications for land which were legislatively conveyed to the State of Alaska by 43 U.S.C. § 1635(c)"). Because IBLA's position on legislative approval and section 905 of ANILCA "appears already set," recourse to administrative remedies would be futile and will not be required.

■ However, it appears that BLM's determinations should be sustained as a matter of law. There is no dispute that by section 905(a) of ANILCA Congress legislatively approved certain Alaska Native Allotment Act applications. ANILCA provides in relevant part:

> Subject to valid existing rights, all Alaska Native allotment applications made pursuant to the Act of May 17, 1906 (34 Stat. 197, as amended) which were pending before the Department of the interior on or before December 18, 1971, ... are hereby approved on the one hundred and eightieth day following December 2, 1980...

43 U.S.C. § 1634(a)(1). The legislative history of this part of ANILCA states:

> An amendment to Section 905 clarifies that the purview of the section includes all Alaska Native allotment applications which were pending before the Department of the interior on "or before" December 18, 1971. The amendment clarifies that applications which were erroneously rejected by the Secretary prior to December 18, 1971, without an opportunity for hearing shall be approved or adjudicated by the Secretary pursuant to the terms of the section.

S.Rep. No. 413, 96th Cong., 1st Sess. 238 (1979). Lord argues that his application was erroneously rejected because it was rejected

---

**12.** The Court has characterized these claims as Lord's Fifth and Sixth Causes of Action.

without a hearing and because BLM did not follow its own handbook and allow him until 1964 to file his proof of use and occupancy. Lord also cites to several IBLA decisions where IBLA reinstated "statutory life" terminations. Docket No. 154 at 24–27; *see, e.g., Heirs of Edward Peter,* 122 IBLA 109 (1992).

The government argues that Lord's application was not legislatively approved because it was properly terminated prior to December 18, 1971. According to the government, the termination was proper without a hearing because Lord's application was rejected as a matter of law. *See Pence v. Andrus,* 586 F.2d 733, 739–40 (9th Cir.1978) (*Pence II* ). In other words, a hearing was not required because there were no factual disputes; Lord simply failed to file proof of occupancy within the agency's statutory period and that was the sole reason for his application's termination.

In addition, or in the alternative, the government argues that section 905 of ANILCA is not applicable to lands conveyed to the State. According to the government, there can be no dispute that by operation of 43 U.S.C. § 1635(c) the full title and interest of the United States in the lands at issue was conveyed to the State as of February 19, 1976.[13] The government encourages the Court to conclude as a matter of law that the United States had no interest in the land at issue in this case to which legislative approval could attach upon ANILCA's passage.

The government's motion for partial summary judgment is granted as to Lord's Fifth Cause of Action: the Secretary of the Interior was not required pursuant to section 905 of ANILCA to deem that Lord's allotment application was legislatively approved.

Lord's allotment application was not legislatively approved because it was not pending before the Department of the interior on or before December 18, 1971. The allotment application was properly terminated in 1963 because Lord failed to file proof of his use and occupancy.[14]

█ In his Sixth Cause of Action, Lord asserts that even if his allotment application was not legislatively approved, the Secretary of the interior was nonetheless required pursuant to section 905 of ANILCA to adjudicate Lord's entitlement to the allotment. The Ninth Circuit Court of Appeals has recognized that 43 U.S.C. § 1634(a) does not require the Secretary of the interior to "readjudicate those applications which were already adjudicated under the [Alaska Native Allotment Act]." *Silas v. Babbitt,* 96 F.3d 355, 358 (9th Cir.1996) (italics in original). After a brief discussion regarding Congress' intent in enacting section 905 of ANILCA, the Court of Appeals further stated: "[w]e hold that Section 905(a) of ANILCA does not mandate the reopening of applications previously adjudicated under the [Alaska Native Allotment Act]." *Id.* at 358–59. Thus, it is clear that section 905 of ANILCA does not apply to allotment applications which were adjudicated prior to the enactment of that statute.

An adjudication of Lord's allotment application was conducted and completed by the Department of the interior on May 31, 1963. Lord's only Alaska Native Allotment application was terminated and closed by BLM in 1963 as a matter of law for failure to submit any evidence of actual use and occupancy. Therefore, the Secretary of the Interior was not required to readjudicate Lord's entitle-

---

**13.** 43 U.S.C. § 1635(c)(1) provides "all right, title, and interest of the United States in and to such lands is deemed to have vested in the State of Alaska as of the date of tentative approval...." ANILCA does not address the issue of whether 43 U.S.C. § 1634(a) is applicable to lands conveyed to the State by § 1635(c)(1). However, the Secretary of the Interior interprets § 1634(a)(1) as not approving applications for land which were legislatively conveyed to the State by § 1635(c). *Elizabeth G. Cook, Eya Osterhaus,* 90 IBLA 152, 155 (Dec. 30, 1985). The government asserts that the Secretary's interpre-

tation is reasonable and that this Court must therefore give deference to the agency's interpretation. *Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991); *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Chugach Alaska Corp. v. Lujan,* 915 F.2d 454, 457 (9th Cir.1990).

**14.** This conclusion obviates any need to rule upon the government's alternative ground for dismissal of this claim.

ment to the allotment pursuant to the passage of ANILCA.

## CONCLUSION

Lord's action is dismissed in its entirety. There are no remaining causes of action for further litigation in this Court.

### IT IS THEREFORE ORDERED:

Defendants' motion for partial judgment on the pleadings at **Docket No. 105** is **GRANTED.** Defendants' motion for partial summary judgment at **Docket No. 107** is **GRANTED.** Defendants' motion for partial summary judgment at **Docket No. 143** is **GRANTED.**

Defendants' motion for partial summary judgment at **Docket No. 137** is **GRANTED IN PART AND DENIED IN PART.** The motion is granted as to Lord's Second, Third, Fourth, Seventh and Eight Causes of Action. The motion is moot and therefore denied as to Lord's First and Ninth Causes of Action.

Plaintiff's motion for summary judgment at **Docket No. 123** is **MOOT and therefore DENIED.** Defendants' motion for partial summary judgment at **Docket No. 142** is **MOOT and therefore DENIED.** Defendants' motion in limine at **Docket No. 144** is **MOOT and therefore DENIED.** Defendants' motion for partial summary judgment at **Docket No. 151** is **MOOT and therefore DENIED.** Plaintiff's motion for summary judgment at **Docket No. 153 is MOOT and therefore DENIED.**

### *AMENDED ORDER*

On November 5, 1997, this Court entered an Order dismissing this case in its entirety. Docket No. 179. A judgment based upon that Order was subsequently entered. Docket No. 180. Walter Lord ("Lord") has filed a motion for reconsideration. *See* Docket No. 181 (motion for reconsideration and for new trial).[1] Lord seeks reconsideration on three bases. First, Lord argues that the Court has improperly weighed the evidence and made credibility determinations, this being

contrary to the summary judgment standard set forth in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Second, Lord argues that the Bureau of Land Management's ("BLM") decision of May 31, 1963, is not entitled to administrative finality for the purposes of the Alaska National Interest Lands Conservation Act ("ANILCA"), Pub.L. No. 96–487 (1980). Third, Lord argues that even assuming he received BLM's decision of May 31, 1963, and that such receipt satisfies any post deprivation due process concerns, the Court has not addressed Lord's contention that due process was violated because Lord did not receive the pre-deprivation due process that was required by the applicable BLM regulations, and that is required by the Constitution.

## DISCUSSION

**1. Did the Court improperly weigh the evidence?**

 Lord acknowledges that there does not appear to be a factual dispute that a return receipt for the envelope that BLM contends contained its May 31, 1963, decision terminating Lord's allotment application was signed by Etta Mae Lord. Docket No. 181 at 2. However, Lord contends that there is a genuine issue of material fact as to what Etta Mae Lord signed for. Phrased somewhat differently, Lord argues that there is a genuine issue of material fact regarding whether the certified mail for which Etta Mae Lord signed contained BLM's May 31, 1963 decision, or some other document, or nothing at all.

Etta Mae Lord, in her affidavit, states that she does not "recall ever seeing" BLM's decision. In ¶ 6 of his first affidavit, Lord expressly states that BLM's decision of May 31, 1963, "was apparently received by my wife Etta Mae Lord. I was not aware that my wife had received this correspondence until as long as many years after it was signed for by my wife..." The government

---

1. Pursuant to Rule 59 of the Federal Rules of Civil Procedure, Lord also moves for a new trial. The motion for a new trial will be disregarded. Rule 59 is only properly invoked after a trial by jury or a trial by court. *See* Fed.R.Civ.P. 59(a). In this case, all matters have been decided at a pretrial stake. *See* Fed.R.Civ.P. 56.

has provided a declaration from a BLM Land Law Examiner (James F. Moore) stating that the letter was mailed to Lord on May 31, 1963, in accordance with BLM procedure. A copy of the termination letter is included in the administrative record.

Lord has produced no credible evidence suggesting an inference that the envelope was empty, or that it contained some other piece of correspondence. Lord's first affidavit clearly implies that the certified mail signed for by Etta Mae Lord contained the letter. Etta Mae Lord's affidavit of June 3, 1997, in which she states that she does not "recall" ever having seen the letter does not raise a genuine issue of fact. More than thirty years after the fact, it is to be expected that Etta Mae Lord does not recall having seen the letter. Finally, the government has provided a thorough and complete administrative record which clearly reveals that the termination decision of May 31, 1963, was mailed to Lord by certified mail and that this was the only piece of correspondence sent to Lord on that date.

In his motion for reconsideration, Lord cites to *Nunley v. City of Los Angeles,* 52 F.3d 792, 795–96 (9th Cir.1995). In *Nunley,* the Court of Appeals interpreted Federal Rule of Appellate Procedure 4(a)(6). Rule 4(a)(6) provides for an extension of time to file notice of appeal upon a showing that the would be appellant did not receive notice of the entry of judgment and that no other party would be prejudiced by the extension. Lord directs the Court's attention to the following statement: "When a movant specifically denies receipt of notice, a district judge must then weigh the evidence and make a considered factual determination concerning receipt, rather than denying the motion out of hand based upon proof of mailing." *Id.* at 796. This statement is inapposite to the circumstances of this case for two obvious reasons. First, the Court is not basing its decision in this case upon proof of mailing, the Court is basing its decision upon proof of receipt. Second, the court in *Nunley* expressly stated that "actual receipt is difficult to show without using certified mail." *Id.*

In this case, certified mail was used and Etta Mae Lord signed for the mail. There is no evidence to support Lord's counsel's newly raised contention that the envelope was empty, or perhaps contained something else. While certified mail may not be a foolproof method, it was one of the most reliable alternatives available to the government, and the government complied with the required procedure of documenting receipt. The Court concludes that this is not a genuine issue of material fact, and that the Court did not improperly weigh the evidence.

**2. Was BLM's decision entitled to administrative finality?**

▮▮▮ Lord next contends that the Court's decision to give administrative finality to BLM's May 31, 1963, decision is contrary to agency practice as evidenced in the Interior Board of Land Appeals ("IBLA"), which holds that for the purposes of ANILCA a document does not constitute a valid, appealable decision and is thus not entitled to administrative finality where the document fails to inform the applicant of his right to appeal and how to exercise that right. *See Heirs of Alexander Williams,* 121 IBLA 224, 231–33 (1991). If BLM's decision was not entitled to administrative finality, then Lord contends that his application must be deemed pending on or before December 18, 1971, for the purposes of ANILCA.

This is not a new argument. Lord raised this point in various briefs submitted to the Court and the argument was rejected. BLM's decision expressly stated that Lord's allotment application was terminated:

> Accordingly, the application for allotment is terminated and the case file closed of record in this office. This decision does not affect the rights of applicant to make another application (43 C.F.R. 67.5(f)).

Admin. Rec. Vol. I at 14. The decision also expressly set forth the grounds upon which it was based. *Id.* Moreover, pursuant to the published regulations applicable at that time, Lord had a right to an administrative appeal of the decision first to the Director of BLM, 43 C.F.R. §§ 67.9, 221.1 (1963), and from the Director of BLM to the Secretary of the Interior, 43 C.F.R. § 221.31 (1963). BLM's decision was also suspended during the time period in which an appeal could be filed, and

during the pendency of an appeal, if filed. 43 C.F.R. § 221.101 (1963). While it is true that BLM's decision did not explicitly notify Lord of his right to an administrative appeal, the Court concluded that Lord had notice of that right by publication of the regulations in the *Federal Register. See Shiny Rock Mining Corp. v. United States,* 906 F.2d 1362, 1364 (9th Cir.1990) (publication in the *Federal Register* "is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance"); *Government of Guam v. United States,* 744 F.2d 699, 701 (9th Cir.1984) (publication in the *Federal Register* "constituted formal notice to the world").

Further, *Heirs of Alexander Williams,* 121 IBLA at 231–33, is easily distinguishable from this case. As has been discussed, the Administrative Record in this case contains clear evidence that BLM's termination letter was received by Etta Mae Lord. This Court made clear in its previous Order that Lord's wife was an authorized agent upon whom delivery of BLM's termination letter could lawfully be made. *See* Docket No. 179 at 17, 20. The Court therefore concludes that BLM's decision of May 31, 1963, was entitled to administrative finality.

**3. Were Lord's pre-deprivation due process rights violated?**

 In its Order, the Court noted that the Secretary of the interior on December 6, 1958, published regulations applicable to Lord's application. 23 *Federal Register* at 9484–85, *codified at,* 43 C.F.R. §§ 67.1 to 67.11 (1963). Those regulations provided in part:

> An allotment will not be made until the applicant has made satisfactory proof of substantially continuous use and occupancy of the land for a period of five years and the lands are surveyed by the Bureau of Land Management...

43 C.F.R. § 67.7 (1963). This proof could be submitted either with the application, if the applicant had by that time already completed the required five years of use and occupancy, or after the filing of the application once the required use and occupancy had been completed. *Id.* The regulations also provided

that if an applicant did not file the requisite proof of use and occupancy within six years of the filing of an allotment application, that application was terminated. 43 C.F.R. § 67.5(f). Further, the regulations provided for the situation, such as in this case, where the application was filed prior to publication of the regulations:

> If the application was filed prior to the effective date of this paragraph, the application will be terminated under this paragraph only by decision of the authorized officer after appropriate notice to the applicant, granting him a reasonable time within which to file proof of continuous use and occupancy of the land as required by the regulation in this part.

*Id.* Since Lord's application was filed on May 24, 1957, the Court concluded that the six year period for filing of proof of use and occupancy expired on May 24, 1963.

Lord argues that the fundamental error that led to this case is BLM's treatment of Lord's allotment application as a "statutory life" application. According to Lord, BLM's May 31, 1963, decision is thrice erroneous: "(1) it was not rendered by an authorized officer, (2) it was not rendered after appropriate notice to Lord; and (3) it was rendered without giving Lord a reasonable time in which to file proof of continuous use and occupancy." *Cf. Heirs of Edward Peter,* 122 IBLA 109, 113–16 (1992). Lord characterizes this case as a pre-deprivation notice and hearing case. Relying upon *Pence v. Kleppe,* 529 F.2d 135, 141 (9th Cir.1976), Lord argues that he was entitled to pre-deprivation notice and a hearing prior to his allotment application's termination.

The Court has previously noted that due process normally requires notice and an opportunity to be heard. Where any proceeding will finally determine a person's property rights, he is entitled to notice reasonably calculated, under all of the circumstances, to apprise him of the pendency of the proceeding and an opportunity to present his claim or objections. *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). What is "reasonable notice" depends upon all of the circumstances and requires a delicate balanc-

ing of the people's interest in a final resolution of disputes and the claimant's right to protect his property. *Id.; see also Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Actual notice by mail is sufficient to meet the requirements of due process:

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Mennonite Board of Missions,* 462 U.S. at 800 (emphasis in original).

In this case, there is no record indicating that Lord ever notified BLM that he had a new and different address prior to May 31, 1963. The procedure employed by the Department of the interior with respect to BLM's May 31, 1963, decision: (1) set forth the basis of BLM's decision to terminate Lord's allotment application; (2) provided for an administrative appeal following which the termination of Lord's allotment application would become final; (3) provided an opportunity for hearing on any issue of fact pertaining to the termination of Lord's allotment application; and (4) sent notice to Lord at his last known address in a manner in which the decision was to be delivered only to Lord or an authorized agent for Lord. This procedure was reasonably calculated to provide Lord with notice of BLM's action. The procedure also provided Lord with an opportunity to be heard. Therefore, the Court concludes that Lord's pre-deprivation due process rights were not violated.

**IT IS THEREFORE ORDERED:**

Plaintiff's motion for reconsideration at **Docket No. 181** is **DENIED.** Plaintiff's motion for a new trial at **Docket No. 181** is **MOOT and therefore DENIED.**